**EVEREST EXPLORATION, INC., Appellant,**

v.

**URI, INC., Appellee.**

**No. 04–03–00341–CV.**

Court of Appeals of Texas, San Antonio.

Jan. 14, 2004.

Russell Manning, Hornblower, Manning & Ward, P.C., Corpus Christi, for Appellant.

Marc D. Flink, Keith P. Ray, Alfred C. Chidester, Baker & Hostetler LLP, Denver, CO, J.A. 'Tony' Canales, Canales & Simonson, P.C., Corpus Christi, Luciano Adrian Rodriguez, Attorney At Law, Laredo, TX, for Appellee.

Sitting: SARAH B. DUNCAN, Justice, SANDEE BRYAN MARION, Justice, PHYLIS J. SPEEDLIN, Justice.

## OPINION

Opinion by SARAH B. DUNCAN, Justice.

Everest Exploration, Inc. appeals the summary judgment declaring that uranium leases held by its competitor, URI, Inc., were extended by payment of shut-in royalties and awarding URI its attorney's fees. We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

URI, Inc. and Everest Exploration, Inc. claim competing rights to the uranium underlying certain property owned by the Vasquez family. URI bases its claim on four uranium mining leases and a ratification agreement by which the Vasquez family conveyed to URI the right to mine the uranium until February 12, 2000 "and so long thereafter as uranium ... is produced in paying quantities from said Leased Land." It is undisputed that, on February 12, 2000, URI had not produced any uranium from the Vasquez family's property. However, in 2000, 2001, and 2002, URI timely tendered to the Vasquez family shut-in royalty payments pursuant to the leases' shut-in royalty clauses, which provide:

If Lessee ... has discovered uranium ... on said Leased Land ..., which in Lessees' opinion is capable of being produced in commercial quantities, but is not being produced ..., then this lease shall not terminate ..., and it shall nevertheless be considered that uranium ... is being produced in paying quantities from said Leased Land provided a shut-in Royalty is paid. .... When the above Shut-in payment is made, it shall serve to extend the term of said lease for one (1) year from the date said payment is made ....

On the advice of Everest Exploration, the Vasquez family rejected the tendered shut-in royalty payments. Everest based its advice on the January 2000 uranium top lease it had entered into with the Vasquez family subject to the rights, if any, of URI and its view that URI had no rights because its leases had terminated on February 12, 2000. The dispute between the parties thus hinges upon whether URI was entitled to extend its leases under the shut-in royalty clauses and thus whether URI had "discovered uranium" that "in [its] opinion" "is capable of being produced in commercial quantities." Since it is undisputed that URI had discovered uranium on the leased lands, the dispositive issue is whether, in URI's opinion, the uranium "is capable of being produced in commercial quantities."

In December 2001, URI sued the Vasquez family for breach of contract and for a declaratory judgment that its leases were still in effect. Everest intervened, seeking a declaratory judgment that URI's leases had terminated on February 12, 2000 and were not extended by URI's tender of the shut-in royalty payments. URI counterclaimed against Everest for tortious interference with contract and declaratory relief. Both URI and Everest moved for summary judgment on whether URI's tender of the shut-in royalty payments extended the leases. The trial

court granted URI's motion, denied Everest's, declared that the URI leases were properly extended by the shut-in royalty payments, and awarded URI $201,778.25 in attorney's fees against Everest and the Vasquez family, jointly and severally. After these issues were severed from the remainder of the case, Everest appealed.

### STANDARD OF REVIEW

We review a summary judgment de novo. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215–216, No. 02–0485, 2003 WL 22999368, at *3 (Tex. Dec.19, 2003). Accordingly, we will uphold a traditional summary judgment only if the summary judgment record establishes the absence of a genuine issue of material fact and that the movant is entitled to judgment as a matter of law on a ground set forth in the motion. TEX.R. CIV. P. 166a(c). We view the evidence in the light most favorable to the nonmoving party and disregard all contrary evidence and inferences. *Provident Life & Accident Ins. Co.*, at 215–216, 2003 WL 22999368, at *3. "When both sides move for summary judgment and the trial court grants one motion and denies the other, the reviewing court should review both sides' summary judgment evidence and determine all questions presented[,] ... render[ing] the judgment that the trial court should have rendered." *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex.2000).

### VALIDITY OF URI'S LEASES

For purposes of this appeal, the parties have agreed that "capable of being produced in commercial quantities" means sufficient to "pay[ ] a profit, even small, over operating expenses, ... though it may never repay its costs, and the enterprise as a whole may prove unprofitable." *Clifton v. Koontz*, 160 Tex. 82, 325 S.W.2d 684, 691 (1959) (quoting *Garcia v. King*, 139 Tex. 578, 164 S.W.2d 509, 511 (1942)). The parties disagree on (1) the market price necessary for URI to produce uranium in "commercial quantities" and (2) whether, under the terms of the lease, URI had to have been able to sell uranium at that price on the dates the shut-in payments were tendered.

### *Necessary Market Price*

URI submitted summary judgment evidence establishing it could produce uranium in "commercial quantities" at approximately $8.00 a pound.[1] Everest disputed URI's ability to sell uranium in "commercial quantities" at $8.00 a pound solely by pointing to the following statements made by URI in its April 2002 filing with the Securities and Exchange Commission:

> Excess uranium inventory has had a detrimental effect on uranium prices. This is expected to continue for the next several years. The market price of uranium is currently below our cost to produce uranium and is anticipated to remain so through at least 2002.

> . . . .

> We stopped producing uranium in July 1999 because we were unable to sell

---

1. In a footnote, Everest argues we must disregard two of the affidavits filed by URI in support of its motion for summary judgment because the affidavits were filed under seal without service on Everest. However, the affidavits were filed under seal pursuant to the procedures set forth in an *agreed* protective order; accordingly, URI advised Everest's attorneys of the nature of the affidavits and made them available for inspection by Everest's attorneys. Because Everest agreed to these procedures, we hold the affidavits filed under seal are properly part of the summary judgment record. *Cf. General Chem. Corp. v. De La Lastra*, 852 S.W.2d 916, 920 (Tex.), *cert. dism'd*, 510 U.S. 985, 114 S.Ct. 490, 126 L.Ed.2d 440 (1993) (invited error).

uranium at a profit. Since July 1999 the published price for uranium has ranged from a low of $7.10 per pound to a high of $10.20 per pound. As of April 3, 2002 the spot price was $9.90. We must be able to sell uranium for at least $12 per pound to achieve a positive cash flow.

. . . .

We will be unable to obtain financing for the Vasquez property unless we can obtain a long-term contract to supply uranium at not less than $12 per pound.

Everest contends these statements conclusively establish that the price at which URI can produce "commercial quantities" is $12.00 a pound or at least create a fact issue. We disagree.

URI's SEC filing is clearly dealing with its enterprise profitability and the price at which URI must be able to sell in order to make a profit, considering all its costs and capital investments, not just the cost of production. Therefore, the undisputed evidence of the sales price above which URI can produce "commercial quantities" is approximately $8.00 a pound.

### When?

■ URI contends that the leases were extended if, at the time the shut-in payments were tendered, it believed that uranium could be produced profitably over a reasonable period of time, considering historic, present, and projected future market conditions, while Everest contends the market price had to be high enough to produce a profit on the dates the shut-in payments were tendered. We agree with URI.

■ Texas cases have consistently distinguished between actual production and capability of production in paying or commercial quantities by contrasting what is being produced at the relevant time ("actual production") with anticipated future production ("capability of production"). See Peveto v. Starkey, 645 S.W.2d 770, 771 (Tex.1982); Gulf Oil Corp. v. Reid, 161 Tex. 51, 337 S.W.2d 267, 270–71 (1960); Stanolind Oil & Gas Co. v. Barnhill, 107 S.W.2d 746, 749–50 (Tex.Civ.App.-Amarillo 1937, writ ref'd); see also Anadarko Petroleum Corp. v. Thompson, 94 S.W.3d 550, 558 (Tex.2002) (recognizing distinction between wells actually producing and wells capable of producing but shut-in because of no available market or pipeline). And the supreme court has rejected the argument that production in paying or commercial quantities is determined at a static point in time or over an arbitrary period of time. See Clifton v. Koontz, 325 S.W.2d at 690. Rather, the test is "[w]hether there is a reasonable basis for the expectation of profitable returns . . . ." Id. at 691. Thus, a lease is capable of producing in commercial quantities if "under all the relevant circumstances a reasonably prudent operator would, for the purpose of making a profit and not merely for speculation," maintain the lease in the manner it is being maintained. Anadarko, 94 S.W.3d at 559 (quoting Clifton, 325 S.W.2d at 691).

■ When read in light of Texas case law construing mineral leases, the Vasquez leases unambiguously allow URI to extend its leases by tendering shut-in royalties if URI believed uranium could be produced profitably over a reasonable period of time considering all the relevant circumstances. URI submitted summary judgment evidence that "it was and continues to be URI's opinion that the uranium beneath the Vasquez property subject to the URI leases is capable of being produced in commercial quantities and at a profit," evidence of the facts and circumstances supporting that opinion, and evidence that profitable production would likely occur by 2003 or 2004. Everest did not controvert

any of this evidence. Accordingly, the trial court did not err in granting URI's motion for summary judgment and in denying Everest's.[2]

## ATTORNEY'S FEES

Finally, Everest argues the trial court erred in its attorney's fees award because (1) URI failed to segregate and (2) its attorneys' time and hourly rates "are grossly excessive and outrageous in comparison to the time expended and fees charged by counsel for Everest." We disagree.

### *Applicable Law and Standard of Review*

In a declaratory judgment proceeding, the trial "court may award ... reasonable and necessary attorney's fees as are equitable and just." TEX. CIV. PRAC. & REM.CODE ANN. § 37.009 (Vernon 1997). If the trial court awards fees in a declaratory judgment proceeding, we review the award under an abuse of discretion standard, "subject to the requirements that any fees awarded be reasonable and necessary, which are matters of fact, and to the additional requirements that fees be equitable and just, which are matters of law." *Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex.1998). The determination of whether attorney's fees are reasonable and necessary is guided by reference to the factors set forth in Rule 1.04 of the Rules of Professional Conduct. *Id.* at 21. Additionally, "to show the reasonableness and necessity of attorney's fees, the [party seeking an award of attorney's fees] is required to show that the fees were in-

curred while suing the [party] sought to be charged with the fees on a claim which allows recovery of such fees." *Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 10 (Tex.1991). "A recognized exception to this duty to segregate arises when the attorney's fees rendered are in connection with claims arising out of the same transaction and are so interrelated that their 'prosecution or defense entails proof or denial of essentially the same facts.'" *Id.* at 11 (quoting *Flint & Assoc. v. Intercontinental Pipe & Steel, Inc.*, 739 S.W.2d 622, 624–25 (Tex.App.-Dallas 1987, writ denied)). "Therefore, when the causes of action involved in the suit are dependent upon the same set of facts or circumstances and thus are 'intertwined to the point of being inseparable,' the party suing for attorney's fees may recover the entire amount covering all claims." *Sterling*, 822 S.W.2d at 11–12 (quoting *Gill Sav. Ass'n v. Chair King, Inc.*, 783 S.W.2d 674, 680 (Tex.App.-Houston [14th Dist.] 1989), *modified*, 797 S.W.2d 31 (Tex.1990)).

On appeal, matters of fact are subject to legal and factual sufficiency review. *See Bocquet*, 972 S.W.2d at 21. To determine whether there is legally sufficient evidence, we review "only the evidence and the inferences tending to support the finding and disregard all evidence and inferences to the contrary." *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex.1965). If there is more than a scintilla of evidence to support the finding, the legal sufficiency challenge must fail. *See Stafford v. Stafford*, 726 S.W.2d 14, 16 (Tex.1987). Conversely, to determine whether there is

---

**2.** In a post-submission brief, Everest argues that uranium on the Vasquez property was not capable of being produced in commercial quantities when the shut-in royalties were tendered because URI had not installed all of the equipment and facilities necessary to produce uranium. *See Anadarko*, 94 S.W.3d at 557–

58. However, Everest did not expressly present this issue to the trial court either in response to URI's motion for summary judgment or in its own motion; therefore, we will not consider it. *See City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979).

factually sufficient evidence to support a finding, we review the entire record to determine if the finding "is so against the great weight and preponderance of the evidence as to be manifestly unjust." *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex.1986). *See generally* Robert W. Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error*, 38 Tex. L.Rev. 361 (1960).

### Segregation

■ Everest first argues that URI was required to segregate the fees incurred in connection with its declaratory judgment claim from those incurred in prosecuting the tortious interference claim against Everest and the breach of contract claim against the Vasquezes. We disagree. As URI's attorneys testified, and as the trial court found, "[i]t is not possible to segregate the fees for legal services into narrow categories. URI's Motion for Patrial [sic] Summary Judgment was the culmination of work performed throughout the litigation. The legal work is interdependent, interrelated and necessary."

### Rates and Hours

■ Everest next argues "[t]he fees charged by URI's attorneys are grossly excessive and outrageous in comparison to time expended and fees charged by counsel for Everest." We again disagree. URI's attorneys testified in detail about their fees in relation to the factors set forth in Rule 1.04 of the Rules of Professional Conduct; and the trial court found the fee awarded "is a reasonable fee for legal services performed by URI Inc.'s counsel" "[u]nder the factors set forth in Rule 1.04(b) . . . ."

### Equitable and Just

■ Everest also challenges the trial court's conclusion that it was equitable and just to award URI its attorney's fees. "Matters of equity . . . [and] the responsibility for just decisions" "are addressed to the trial court's discretion." *Bocquet*, 972 S.W.2d at 21. The trial court's findings recite a sound basis for awarding URI's its fees; and the trial court appears to have applied the guiding legal principles to the evidence.

### APPELLATE ATTORNEY'S FEES

■ Finally, URI argues that, if the trial court's judgment is affirmed, "the case should be remanded to the [t]rial [c]ourt for determination of URI's attorneys' fees incurred in this appeal." We disagree. URI waived its right to pursue its appellate attorney's fees by failing to present evidence or obtain a ruling in the trial court. *See Farmers Texas County. Mut. Ins. Co. v. Griffin*, 868 S.W.2d 861, 870 (Tex.App.-Dallas 1993, writ denied); *City of San Antonio v. International Ass'n of Fire Fighters, Local 624*, 539 S.W.2d 931, 935 (Tex.Civ.App.-El Paso 1976, no writ); Tex.R.App. P. 33.1.

### CONCLUSION

Because the summary judgment evidence conclusively establishes that, in URI's opinion, the uranium underlying the Vasquez family's property was capable of being produced in commercial quantities over a reasonable period of time considering all the relevant circumstances, the trial court correctly ruled that URI's leases were extended by payment of shut-in royalties. And we discern no abuse of discretion in the trial court's award of attorney's fees. We therefore affirm the trial court's judgment.