# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-05-00767-CV

**Axel M. Sigmar and Lucia S. Sigmar, Appellants**

**v.**

**Alan Anderson and Jo Ellen Anderson, Appellees**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 53RD JUDICIAL DISTRICT
## NO. GN501379, HONORABLE SCOTT H. JENKINS, JUDGE PRESIDING

## O P I N I O N

This case concerns whether a bankruptcy court's order approving a sale of real property free of claims, together with the subsequent sale by the debtor, precludes later state court litigation to determine ownership of and the right to use a portion of that property. Axel M. Sigmar and Lucia S. Sigmar filed this suit against Alan Anderson and Jo Ellen Anderson asserting ownership of a strip of land between their property and the Andersons' platted lot along the shore of Lake Travis. The Sigmars also requested a declaration that they had the right under an easement to use certain parts of the disputed area for recreational purposes. The Andersons sought summary judgment, contending that a bankruptcy court order approving the sale of a lot out of a bankruptcy estate—including the area in dispute—barred the district court from considering the Sigmars' claims. The Andersons argued that the Sigmars should have litigated any claims to the disputed area in the

bankruptcy proceeding in which the bankruptcy court authorized the sale of the property out of the bankruptcy estate free and clear of competing claims and interests. Agreeing that the bankruptcy court order barred the Sigmars' claims in this case, the district court rendered a take-nothing summary judgment in favor of the Andersons.

On appeal, the Sigmars assert that the court misconstrued and misapplied the bankruptcy code, based its judgment on insufficient evidence, and erroneously found preclusion of the easement claim that was outside the scope of the bankruptcy court's order. We affirm the judgment regarding the Sigmars' challenges to the ownership of any part of the disputed area, but reverse the judgment with respect to the Sigmars' request for declaratory relief relating to a claimed easement. We remand the cause for further proceedings relating to the assertion of an easement.

The Sigmars and the Andersons both own land carved from a larger tract once owned by George K. Marshall. The parties bought their portions of the larger tract at different times from different subsequent owners. Land from the original Marshall tract is subject to an inundation easement below the 715-foot contour line in favor of the Lower Colorado River Authority for the waters of Lake Travis. Marshall subdivided his land in 1946. Parts of that original tract were replatted as part of Marshall's Harbor and Marshall's Vista. The Andersons own lots 27 and 28 of Marshall's Vista. The dispute is over the boundary between Lot 27 and the Sigmars' adjacent land.

The Sigmars bought their lot in 2000. Deeds to their predecessors in interest purport to convey an easement across land lying between their lot and the waters of Lake Travis to be used for a boat dock and other purposes. Like their predecessors in interest, the Sigmars maintained a

2

boat dock anchored to land submerged in Lake Travis. In 2003, the plat for the adjacent Marshall's Vista subdivision was filed as Document Number 200300060 in Travis County. The Sigmars filed an affidavit of real property ownership with the Travis County Clerk in which they assert that the 2003 plat wrongly includes part of their land within Lot 27 of Marshall's Vista. In the affidavit, they also deny agreeing to replat, attach their preferred description of the boundary, and assert their readiness to enter into an agreement with the owner of the adjacent property—then Marshall's Vista, Ltd.—regarding the correct boundary. The affidavit was filed on September 24, 2003, as Document Number 2003227327 in Travis County.

The Andersons purchased Lot 27 after the Sigmars filed the affidavit and after Marshall's Vista, Ltd. filed for bankruptcy protection. The bankruptcy proceeding relating to Marshall's Vista, Ltd. was administered jointly with that of fellow debtor Marshall's Harbor, Ltd. In October 2003, the debtors filed a motion requesting that the bankruptcy court approve nine sales of properties in the bankruptcy estate subject to executory contracts, including those covering lots 27 and 28 to the Andersons and Lot 130-FS to the Sigmars.[1] In their response to this motion in the bankruptcy court, the Sigmars raised the issue of their dispute regarding the recently platted boundary between their land and Lot 27. The Sigmars proposed a boundary agreement that would memorialize the "correct legal description" of the boundary between their land and Lot 27. They requested "that the Debtors be given authority to enter into the Boundary Agreement as part of the transaction to sell Lot 130-FS to the Sigmars."

---

[1] Although the motion originally listed the lots proposed for sale to the Andersons as lots 36 and 37, the debtors filed an amended motion correcting that mistake.

The bankruptcy court approved only some of the proposed sales. At the hearing, the debtors withdrew their motion to approve the sales to the Sigmars in both Marshall's Vista and Marshall's Harbor. The Sigmars also withdrew their request to enter into "the three separate agreements . . . until such time as we have an agreement as to the lots." The bankruptcy court signed an order approving sales "free and clear of all liens, claims, and interest pursuant to 11 U.S.C. § 363(f) . . . ." An exhibit to the order lists the sale of lots 27 and 28 to the Andersons among the five sales approved. The lots were then sold by the debtor pursuant to the bankruptcy court order. The warranty deed conveying the property from the bankruptcy estate to the Andersons describes the land sold to the Andersons as "Lot 27 and Lot 28, Marshall[']s Vista Subdivision, according to the map or plat thereof; recorded in Document Number 200300060, Official Public Records, Travis County, Texas." The conveyance was made subject to "any and all restrictions, covenants, conditions and easements . . . [that] are still in effect, and shown of record . . . ."

The Sigmars filed this suit in 2005, seeking clear title to or a declaration of their right to use the area that had been the subject of the boundary dispute. The Andersons moved for summary judgment, asserting that the Sigmars' claims were precluded by the bankruptcy proceeding and sale by the debtor, and were an improper collateral attack on the bankruptcy court order. The district court granted the motion.

We review a summary judgment de novo. *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 156 (Tex. 2004). At trial, the movant must show that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. *See Provident Life & Accident Ins. Co.*

*v. Knott*, 128 S.W.3d 211, 215-16 (Tex. 2004) (citing Tex. R. Civ. P. 166a(c)). The movant must establish his entitlement to summary judgment by conclusively proving all essential elements of an affirmative defense as a matter of law. *Havlen v. McDougall*, 22 S.W.3d 343, 345 (Tex. 2000). When reviewing a summary judgment, we take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Joe*, 145 S.W.3d at 157 (citing *Southwestern Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex. 2002)).

The Sigmars contend that the summary judgment was based on the erroneous conclusion that the bankruptcy court's order approving the sale precluded the district court from considering their claims with respect to the boundary dispute. They argue that the bankruptcy court's approval of the sale of the lots free of any claims could not empower the debtor to sell the disputed area to the Andersons because the debtor did not own the disputed area. The Sigmars argue, alternatively, that the summary judgment record did not establish whether their assertion of the boundary dispute was withdrawn from consideration before the bankruptcy court or was resolved by the bankruptcy court's order approving the sale. Finally, they contend that the bankruptcy court did not adjudicate whether they had a right to use the land through an easement granted in their chain of title, therefore, their request for a declaratory judgment was not precluded by the bankruptcy court's order approving the sale of Lot 27.

The Andersons' summary judgment motion was based on the contention that the Sigmars' suit is an impermissible collateral attack on the bankruptcy court order. A collateral attack, unlike a direct attack, does not attempt to secure the rendition of a single, correct judgment in place

5

of the former judgment. *Henderson v. Chambers*, No. 03-04-00599-CV, 2006 Tex. App. LEXIS 2599, at *7 (Tex. App.—Austin March 31, 2006, no pet.); *Ramsey v. Ramsey*, 19 S.W.3d 548, 552 (Tex. App.—Austin 2000, no pet.). Rather, it is an attempt to avoid the effect of a judgment in a proceeding not instituted for the purpose of correcting, modifying, or vacating the judgment, but in order to obtain some specific relief which the judgment currently stands as a bar against. *See Henderson*, 2006 Tex. App. LEXIS 2599, at *7; *see also Biaza v. Simon*, 879 S.W.2d 349, 353 (Tex. App.—Houston [14th Dist.] 1994, writ denied). Only void judgments can be collaterally attacked. *Browning v. Placke*, 698 S.W.2d 362, 363 (Tex. 1985). Judgments are void if the court rendering judgment lacked jurisdiction over the party, property, or subject matter, had no jurisdiction to enter the particular judgment, or had no capacity to act. *Id*. There is no contention in this case that the bankruptcy court order is void. Therefore, if the order stands as a bar to the Sigmars' claims, it cannot be collaterally attacked in this proceeding. *See Henderson,* 2006 Tex. App. LEXIS 2599, at *8.

Whether the bankruptcy court order and the subsequent sale pursuant to that order stand as a bar to the Sigmars' claims in this case implicates the doctrine of claim preclusion. Claim preclusion is a defense that parties can assert to prevent litigation of a claim or cause of action that has been finally adjudicated, as well as related matters that should have been litigated in a prior suit. *Barr v. Resolution Trust Corp.*, 837 S.W.2d 627, 628 (Tex. 1992); *see also Browning v. Prostok*, 165 S.W.3d 336, 349 (Tex. 2005); *Henderson*, 2006 Tex. App. LEXIS 2599, at *17-*18. The doctrine requires proof of the following elements: (1) a prior final judgment on the merits by a court of competent jurisdiction; (2) identity of parties or those in privity with them; and (3) a second action

6

based on the same claims as were raised or could have been raised in the first action. *Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 652 (Tex. 1996). We must determine whether the bankruptcy court's order approving the sale of Lot 27 to the Andersons precludes the Sigmars' claims in this suit.

There is no dispute over whether the first two elements of claim preclusion are satisfied in this case. The bankruptcy order approving the conveyance of Lot 27 to the Andersons pursuant to section 363(f) on November 4, 2003, was not appealed and is final. *See* 11 U.S.C.A. § 363(f) (West 2004). The Sigmars and the Andersons had notice of the proceeding in the bankruptcy court, were represented by counsel at the hearing, and put their claims relating to the boundary dispute in issue. The question with regard to claim preclusion in this case is whether this suit is based on the same claims as were or should have been raised in the bankruptcy court.

The Sigmars argue that ownership of the disputed area was not, in fact, at issue in the bankruptcy proceeding because the disputed area was not part of the bankruptcy estate. The Sigmars contend that the debtor had no interest in the disputed area because the Sigmars owned it. The bankruptcy estate consists of "all legal or equitable interest of the debtor in property as of the commencement of the case." *See id*. § 541(a) (West 2004). Therefore, according to the Sigmars, the area in dispute never became part of the bankruptcy estate nor subject to any bankruptcy proceeding. However, the holder of older title from a common source holds superior title, unless a holder of later title shows that he acquired title as a bona fide purchaser for value and without notice of an earlier existing interest. *Wells v. Kansas Univ. Endowment Ass'n*, 825 S.W.2d 483, 486 (Tex. App.—Houston [1st Dist.] 1992, pet. denied). At the outset of the bankruptcy proceeding, a

7

plat filed in the Travis County records showed that the debtor owned the disputed area. There was no showing that the debtor knew of the dispute when acquiring title. Whether that title was inferior to the Sigmars' title may have been a subject for litigation. *Cf. Canzano v. Ragosa*, 382 F.3d 51, 58-59 (1st Cir. 2004) (portion of property non-debtor claimed under unproven adverse possession theory was part of title owner's bankruptcy estate). The scope of the property included in the bankruptcy estate is broad. *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 204-05 (1983); *see also* 11 U.S.C.A. § 541. After a debtor files a bankruptcy proceeding, the determination of what constitutes property of the estate is a core proceeding over which the bankruptcy court has exclusive jurisdiction. *See* 11 U.S.C. § 541; 28 U.S.C. §§ 157(b), 1334(e); *Manges v. Atlas*, 167 B.R. 848 (Bankr. S.D. Tex 1994) (citing *Slay Warehousing Co. v. Modern Boats, Inc.*, 775 F.2d 619, 620 (5th Cir. 1985)). A party who has a rival ownership claim to property and has notice of and participates in the bankruptcy court proceedings leading to the sale of that property must assert its claim during that proceeding or it will waive its right to assert that claim. *See Canzano*, 382 F.3d at 60-62; *see also* 11 U.S.C.A §§ 363, 541.

The Sigmars also argue that their ownership interest was not before the bankruptcy court because section 363(f) of bankruptcy code does not contemplate the sale of the interests of non-debtor co-owners, unlike section 363(h). *Compare* 11 U.S.C.A. § 363(f) *with id*. § 363(h) (West 2004). However, the debtor and the Sigmars were not co-owners and the court did not order the Sigmars to sell their claim to the disputed area. Instead, the Sigmars and the debtor had, at most, rival claims to exclusive ownership of the disputed land. Consistent with the debtor's ownership,

8

neither the order nor the warranty deed to the Andersons mentions that the Sigmars have an interest, much less purport to convey title from the Sigmars to the Andersons. Subsection (f), rather than subsection (h), is applicable to this claim.

The procedural posture of the Sigmars' title claim in this proceeding resembles that of the plaintiffs' fraud claims in *Prostok*. *See* 165 S.W.3d at 340-44. In that case, the plaintiffs in the state court action had challenged a proposed Chapter 11 plan of reorganization claiming, among other things, that certain assets in the plan were fraudulently undervalued. *See id.* at 341. The bankruptcy court rejected the challenge and entered an order confirming the plan of reorganization. *See id.* The plaintiffs then filed a state court lawsuit alleging a variety of causes of action against the former officers, directors, and financial advisors of the corporate debtor based on the same conduct that had formed the basis of their challenge to the plan of reorganization. *See id.* The Texas Supreme Court held that claims in the state court proceeding were a collateral attack on the bankruptcy court confirmation order and were, therefore, barred from being religitated in the subsequent state court lawsuit. *See id.* at 348-49. Although one of the primary issues in *Prostok* was whether the state court fraud claims were "intrinsic" or "extrinsic" to the bankruptcy court fraud claims, the *Prostok* court confirmed the rule that issues that either were or should have been litigated in a prior judicial proceeding, including a bankruptcy proceeding, cannot be relitigated in a subsequent proceeding that would have the effect of avoiding the prior court order or judgment. *See id.*

9

Here, the Sigmars had notice of the proposed sale of Lot 27, raised the boundary dispute on Lot 27 with the bankruptcy court, and proposed to resolve it. The Sigmars were represented at the hearing during which the sale of Lot 27 free of any claims inconsistent with the replatting of record was approved, but did not object to the sale. Sales approved under subsection (f) are "free and clear of *any interest* in such property of *an entity other than the estate*, only if . . . such interest is in bona fide dispute . . . ." 11 U.S.C.A. § 363(f)(4) (emphases added). The sale of Lot 27 by the debtor to the Andersons pursuant to the bankruptcy court order, memorialized by the November 18, 2003 warranty deed, conveyed Lot 27 as described in the 2003 plat free and clear of all other claims and interests except "any and all restrictions, covenants, conditions, and easements . . . still in effect, and shown of record," which were interests expressly excepted from the sale by the deed. The Sigmars' ownership claim was in bona fide dispute at the bankruptcy court and thus was extinguished by the bankruptcy court's order approving the sale free of all claims, including the Sigmars' boundary claims, together with the deed conveying the property to the Andersons free of any such claims. Thus, the Sigmars are precluded from bringing their trespass to try title claim in this cause.

Claim preclusion also defeats the Sigmars' assertions of title based on the doctrine of strips and gores[2] and through adverse possession. Under both theories, the Sigmars assert an ownership interest or claim that preceded that of the debtor and the court-ordered sale. Both theories should have been raised in the bankruptcy court when the debtors sought to sell the property and the

---

[2] The doctrine of strips and gores is essentially a presumption that, when a grantor conveys all land he owns adjacent to a narrow strip that thereby ceases to be useful to him, he also conveys the narrow strip unless he plainly and specifically reserves the strip for himself. *Angelo v. Biscamp*, 441 S.W.2d 524, 526 (Tex. 1969).

10

Sigmars asserted their title to the disputed area. Both claims were extinguished by the sale approved by the bankruptcy court. *See* 11 U.S.C.A. § 363(f); *see also Canzano*, 382 F.3d at 60-61 (ordered sale conveyed title free and clear of adverse possession claim made by party with notice of sale proceeding). Under these circumstances, where the Sigmars were aware of, had notice of, and participated in the bankruptcy proceeding to the point of raising the issue of the disputed property boundary, the Sigmars are precluded from claiming they have title to the disputed area of Lot 27. They cannot collaterally attack in this cause the bankruptcy court order or the sale pursuant to that order and urge realignment of the boundary of Lot 27 set by the plat and the warranty deed to the Andersons.

The Sigmars also contend that their request for declaratory relief to the effect that they have an easement is not precluded because it was not within the scope of the bankruptcy court order or the sale pursuant to that order. They argue that the easement claim is distinct because, instead of seeking title, they seek a declaration of their right to use a portion of Lot 27 to anchor their boat dock and for other recreational purposes by easement. They contend that bankruptcy court action pursuant to section 363(f) does not extinguish easements. *See* 11 U.S.C.A. § 363(f).

Although the bankruptcy court has the power to authorize a sale free and clear of liens and other interests, at least one bankruptcy court has held such authorization has "no impact on restrictions of record that run with the land" such as easements. *Silverman v. Ankari*, 196 B.R. 251, 255-56 (E.D.N.Y. 1996). However, the record in this case does not require us to decide whether this is or will remain an accurate statement of federal bankruptcy law. Even if we assume section

11

363(f) grants the bankruptcy court power to order sales free of interests such as easements, the record contains no indication that the easement issue was ever in dispute in the bankruptcy court, and the warranty deed to the Andersons expressly excepts out and preserves any easements predating the transfer:

> This conveyance is made and accepted subject to the following matters, to the extent same are in effect at this time: (i) any and all restrictions, covenants, conditions and easements, if any, relating to the Property, but only to the extent that they are still in effect, and shown of record in [Travis County, Texas] . . . .

Consequently, even if the bankruptcy court order could be interpreted as granting the debtor the power to convey Lot 27 free of easements running with the land, the debtor did not, in fact, convey the property in that manner. The Sigmars attached deeds to their response to the motion for summary judgment that they assert show the existence of easements. The Sigmars assert that their easements are in their chain of title and part of the Travis County records. They assert that their predecessors in title were granted easements across lands adjacent to theirs lying between the 715-foot contour line and the waters of Lake Travis for boat docks, recreational use, and lake access.

Based on the record before us, the bankruptcy proceeding did not involve or resolve the validity of any easements, nor were the Sigmars required to raise such issues. The easement claim is not precluded because it concerns a right that was not adjudicated by the bankruptcy court and does not even purport to be extinguished by the deed under which the Andersons took title. The easement claim does not attempt to avoid the effect of the sale order or overturn it, nor does it attempt to obtain relief that is inconsistent with the order approving the sale or the sale itself. The

12

easement claim is, thus, not an impermissible collateral attack on the bankruptcy court order. Accordingly, since the only basis for summary judgment asserted by the Andersons was claim preclusion pursuant to the bankruptcy court order and debtor's sale of the property in question, we conclude that it was error to grant summary judgment on the Sigmars' request for declaratory relief regarding their right to use portions of Lot 27 pursuant to an easement.

We reverse the summary judgment regarding the declaratory judgment action based on the assertion of an easement, and remand that claim for further proceedings. We affirm the judgment in all other respects.

_____

G. Alan Waldrop, Justice

Before Justices Patterson, Puryear and Waldrop

Affirmed in Part; Reversed and Remanded in Part

Filed: October 27, 2006