Opinion issued February 15, 2008









In The

Court of Appeals

For The

First District of Texas






NO. 01-06-00067-CV






LINDA KOVAL, ADMINISTRATRIX OF THE ESTATE OF GRANT
LYNN KOVAL, DECEASED, Appellant


V.


HENRY KIRKLAND CONTRACTORS, INC., Appellee






On Appeal from Probate Court No. 3

Harris County, Texas

Trial Court Cause No. 337,789-402






MEMORANDUM OPINION


 Linda Koval ("Mrs. Koval"), administratrix of the estate of Grant Lynn Koval
("Koval"), appeals a summary judgment rendered in favor of Henry Kirkland
Contractors, Inc. ("Kirkland") regarding a previous judgment of a bankruptcy court
relevant to the estate. The trial court additionally found and awarded attorney's fees
and costs to Kirkland. We affirm.
BACKGROUND


 Robert and Judy Newey's home was damaged in June 2001 by Tropical Storm
Allison which caused approximately five billion dollars of damage to area homes and
businesses. The Neweys filed a notarized claim with the National Flood Insurance
Program to repair the dwelling. 

 In June 2001, Koval was an independent contractor associated with Kirkland. 
His mother, Mrs. Koval, was an office manager and bookkeeper for Kirkland during
this time. Koval, on behalf of Kirkland, entered into a Representation and Repair
Agreement with the Neweys to make repairs to their home. After signing the
agreement, the Neweys delivered a check to Kirkland as a deposit for the repairs.

 At some point after the agreement was signed, but before repair work began,
the Neweys and Kirkland agreed to modify their contract. Instead of providing repair
work in exchange for the Newey's insurance proceeds, Kirkland agreed to refund the
deposit amount and to allow the Neweys to keep the insurance proceeds in exchange
for the Neweys' agreement to sell their home ("the Newey home") to Kirkland in its
damaged state. Kirkland planned to remodel the home and either to rent or to sell it. Kirkland provided Koval with a check that returned the Neweys' deposit and
directed him to memorialize the renegotiated deal on behalf of the company. Koval
returned the money, but signed an agreement with the Neweys that gave himself, not
Kirkland, the right to lease the home with an option to purchase it at a later date. In November 2001, Koval became a tenant in the Newey home and began
making lease payments to the Neweys. Around the same time, restoration work
began on the home, with Koval acting as foreman of the project purportedly on behalf
of Kirkland. Koval ordered supplies and materials using Kirkland charge accounts
which Kirkland paid in addition to all of the labor costs. Mrs. Koval tracked all of
the expenses on the Newey home project in her role as office manager.

 Work on the home continued at a rapid pace until March 2002, when both
Koval and Mrs. Koval ended their respective and formal relationships with Kirkland. 
However, after leaving Kirkland, Koval continued to charge supplies against the
company's accounts at local stores. Shortly after learning of these charges, Kirkland
filed suit against both Koval and Mrs. Koval. During discovery, Kirkland uncovered
the agreement between Koval and the Neweys. Based on this new information,
Kirkland further claimed that Koval had used its credit to make improvements on
what became Koval's own home.

 In August 2002, Mrs. Koval moved into the Newey home, and Koval exercised
his option to purchase it. The next month, the Neweys signed a deed conveying the
home to Koval. 

 On December 25, 2002, Koval committed suicide. He died intestate,
unmarried, and childless. Mrs. Koval filed an application to determine heirship,
naming herself and Koval's half-brother, Shane Michael Kovalski, the sole heirs of
the estate. The court named Mrs. Koval the administratrix of the estate and declared
her and Shane the sole heirs.

 Kirkland filed a claim as a creditor against the estate for the labor and materials
used to improve the Newey home. Mrs. Koval, as an individual, designated the
Newey home as her homestead and, in her capacity as administratrix, rejected
Kirkland's claim. 

 Kirkland filed suit in probate court on its rejected claim. On the exact same
day this suit was filed, Mrs. Koval filed a voluntary petition for bankruptcy in her
individual capacity. In her deposition testimony, her sworn bankruptcy petition, and
her homestead designation, Mrs. Koval asserted she owned fee simple title to the
home. 

 Kirkland discovered Mrs. Koval's pending bankruptcy and filed an adversary
proceeding with the bankruptcy court to determine whether Kirkland had a valid
constitutional lien against the property. See Tex. Const. art. XVI, § 37. The
bankruptcy court found that Kirkland had a valid lien in the amount of $100,047.04,
plus all taxable costs. The judgment from the bankruptcy court did not mention
attorney's fees. Mrs. Koval did not appear in the bankruptcy proceeding in her
capacity as administratrix of the estate. 

 Kirkland filed a "request to certify judgment and allow claim" with the probate
court to certify the judgment of the bankruptcy court and to enter its claim as a
preferred debt owed by the estate. Kirkland filed for traditional and complete
summary judgment on its claim, stating that the doctrines of res judicata and
collateral estoppel prohibited the re-litigation of the facts and legal issues surrounding
its constitutional lien against the real property. Kirkland sought final judgment in the
amount of $100,047.04, plus all costs incurred in prosecuting its claim and attorney's
fees under the Probate Code. 

 In a supplemental motion for summary judgment, Kirkland focused on its claim
for attorney's fees. Additional grounds were alleged for recovery of attorney's fees. 
 No response was filed to this supplemental motion. In this motion, Kirkland asked
for attorney's fees under Texas Civil Practice and Remedies Code section 38.001 (1),
(2), and (3), under the theory that Kirkland had "provided services, performed labor
and furnished material with respect to the property of the deceased for which the
claim was established. . . ."

 In reply to Kirkland's motion for summary judgment, Mrs. Koval asserted that
there were genuine issues of material fact regarding both the constitutional lien and
the application of res judicata, that Kirkland had not sufficiently proven its attorney's
fees under the Probate Code, and that there were various procedural defects to
Kirkland's claim. Mrs. Koval claimed that the bankruptcy court did not have proper
jurisdiction to determine issues related to the Newey home because she did not have
legal title to the property until the administration was complete. 

 Kirkland filed more than forty pages of documents with the trial court detailing
the costs it incurred to prosecute its claim. Kirkland alleged more than $37,000 in
attorney's fees and $3,000 in court costs made necessary following Mrs. Koval's
refusal, in her capacity as administratrix, to honor the claim. Mrs. Koval challenged
Kirkland's claim for attorney's fees, arguing they were not authorized by section 315
of the Probate Code and claiming that Kirkland was attempting only to enforce, rather
than to prosecute, its judgment through the probate court.

 On December 19, 2005, the probate court determined that res judicata barred
re-litigation of the lien and granted Kirkland's motion for summary judgment. In
addition to determining Mrs. Koval wrongfully rejected Kirkland's claim and finding
in favor of Kirkland for a $100,047.04 lien, the court also granted Kirkland
$40,971.13 in attorney's fees and court costs under the Probate Code. 

 On appeal, Mrs. Koval argues that the trial court erred in entering judgment in
favor of Kirkland because: (1) res judicata cannot apply offensively; (2) Kirkland
failed to meet all the requirements to establish res judicata; (3) attorney's fees should
be excluded from the calculation of costs under section 315 of the Probate Code; and
(4) Kirkland cannot recover costs because it failed to establish its claim "in the court
of original probate jurisdiction as mandated by Section 313." 

 Kirkland seeks affirmation of the summary judgment and requests that this
Court tax the costs of this appeal against Mrs. Koval. Kirkland further requests that
we remand the case to the trial court to calculate attorney's fees and costs incurred for
this appeal. 

STANDARD OF REVIEW

 We review summary judgments de novo. Valence Operating Co. v. Dorsett,
164 S.W.3d 656, 661 (Tex. 2005). Under the standard of review for traditional
summary judgment, the moving party must establish that no material fact issue exists
and that it is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); M.D.
Anderson Hosp. & Tumor Inst. v. Willrich, 28 S.W.3d 22, 23 (Tex. 2000). Once the
movant produces evidence warranting summary judgment, the nonmovant must
present evidence that raises a fact issue. Walker v. Harris, 924 S.W.2d 375, 377
(Tex. 1996). In an appeal from a take-nothing summary judgment, the reviewing
court should view all evidence in the light most favorable to the nonmovant and
indulge every reasonable inference in the nonmovant's favor. Id. A summary
judgment may be affirmed on any of the movant's theories which has merit. See
Cincinnati Life Ins. Co. v. Cates, 927 S.W.2d 623, 627 (Tex. 1996). 

RES JUDICATA Mrs. Koval generally contends Kirkland should be barred from applying the
doctrine of res judiciata in the probate proceeding. In this case, the trial court's
extensive order granting summary judgment stated inter alia, "The undisputed
summary judgment evidence before the Court demonstrates that Bankruptcy Court for
the United States District Court for the Southern District of Texas has fully decided
all issues of fact and law regarding Kirkland's claim against property of the Estate at
a trial during which the administrator, in her individual capacity, fully participated. 
The evidence before the Court, coupled with applicable law, demonstrates that the
Final Judgment of the Bankruptcy Court finding the existence of a debt and awarding
Kirkland a constitutional mechanics' and materialman's lien is binding on this court
as res judicata." 

 As a preliminary matter, we address whether this case involves the doctrine of
collateral estoppel or res judicata. The supreme court sought to clear up some of the
confusion associated with those terms in Barr v. Resolution Trust Corp., 837 S.W.2d
627, 628 (Tex. 1992). The court noted that, broadly speaking, res judicata is the
"generic term" for a group of related concepts concerning the conclusive effects given
final judgments. Id. Within this general doctrine, there are two principal categories:
(1) res judicata, also known as claim preclusion, and (2) collateral estoppel, also
known as issue preclusion. Id. "Res judicata or claim preclusion prevents the
relitigation of a claim or cause of action that has been finally adjudicated, as well as
related matters that, with the use of diligence, should have been litigated in the prior
suit." Id. Collateral estoppel or issue preclusion prevents relitigation of particular
issues already resolved in a prior suit. Id. The policies behind res judicata reflect the
need to bring all litigation to an end, to prevent vexatious litigation, to maintain
stability of court decisions, to promote judicial economy, and to prevent double
recovery. Id. at 629.

 The preclusive effect of a federal judgment is determined by federal law. Eagle
Props., Ltd. v. Scharbauer, 807 S.W.2d 714, 718 (Tex. 1990) ("[S]ince the first suit
was decided in federal court . . . federal law controls the determination of whether res
judicata will bar a later state court proceeding."). Under federal law, for the doctrine
of res judicata to apply, four elements must be satisfied: (1) the parties must be
identical or in privity; (2) the prior judgment must have been rendered by a court of
competent jurisdiction; (3) there must have been a final judgment on the merits; and
(4) the same cause of action must be involved in both cases. In re Intelogic Trace,
Inc., 200 F.3d 382, 386 (5th Cir. 2000); see also Amstadt v. United States Brass Corp.,
919 S.W.2d 644, 652, (Tex. 1996); Coalition of Cities for Affordable Utility Rates v.
Pub. Util. Comm'n of Tex., 798 S.W.2d 560, 562-563 (Tex. 1990). The actions
involve the same claims if they are based on "the same nucleus of operative facts." 
Walker v. Anderson, 232 S.W.3d 899, 912 (Tex. App.--Dallas 2007, no pet.); In re
Southmark Corp., 163 F.3d 925, 934 (5th Cir.1999).
 The actions at issue are based on the same nucleus of operative facts: the facts
surrounding the alleged ownership and repair of the Newey home. Because the motion
for summary judgment alleged res judicata, and the court ruled that res judicata
applied in this case, we review that determination without regard to whether Kirkland
could have also alleged collateral estoppel, or issue preclusion. 

A. OFFENSIVE USE OF RES JUDICATA

 In her first issue, Mrs. Koval asks:

 When a Plaintiff files a lawsuit in probate court and subsequent to the trial of
that lawsuit files an almost identical lawsuit in bankruptcy court, and tries the
bankruptcy court case to a final judgment, is the Plaintiff prohibited from
applying res judicata offensively to establish its claims under the earlier filed
lawsuit in probate court?

 Mrs. Koval asserts, without citing authority, that "res judicata operates to
protect a defendant from additional claims, and can only be used in a defensive
manner. It cannot be used by a plaintiff against a new defendant in a new suit as a
'defensive preclusion'-- to do so would result in a perversion of the doctrine and an
inequitable outcome." But the policies behind res judicata reflect "the need to bring
all litigation to an end, prevent vexatious litigation, maintain stability of court
decisions, promote judicial economy and prevent double recovery." Barr, 837 S.W.2d
at 629. We fail to see how those policies are perverted by the offensive use of the
doctrine. On the contrary, just as collateral estoppel may be used offensively, so might
res judicata apply to stop a defendant from relitigating a claim previously litigated. 
See Fletcher v. Nat'l Bank of Commerce, 825 S.W.2d 176, 177 (Tex. App.--Amarillo
1992, no writ); see also Compania Financiara Libano, S.A. v. Simmons, 53 S.W.3d
365, 367 (Tex. 2001) (stating that a final judgment in an action bars the parties and
their privies from bringing a second suit "not only on matters actually litigated, but
also on causes of action or defenses which arise out of the same subject matter and
which might have been litigated in the first suit.") (emphasis added). Thus, we hold
that Kirkland properly used res judicata to bar re-litigation of the claims wholly
resolved by the bankruptcy court. Issue one is overruled.

B. ARE THE ELEMENTS OF RES JUDICATA SATISFIED?

 In her second issue, Mrs. Koval briefs the lack of two essential elements to
support the summary judgment on res judicata grounds: (1) lack of privity between
herself in her individual capacity and in her capacity as administratrix, and (2) no final
judgment from a court of competent jurisdiction. Mrs. Koval failed to preserve her
claim that she, in her individual capacity, lacked privity with herself as administratrix
of the estate by not raising this issue before the trial court in her response to the
motion for summary judgment. See Tex. R. App. P. 33.1(a); Tex. R. Civ. P. 166a(c);
City of Houston v. Clear Creek Basin Auth., 589 S.W.2d 671, 679 (Tex. 1979). 
Accordingly, Mrs. Koval waived her challenge to privity. Tex. R. App. P. 33.1.

 Mrs. Koval challenges the subject matter jurisdiction of the bankruptcy court
to adjudicate a claim over property of the estate. Citing Marshall v. Marshall, Mrs.
Koval asserts that federal courts lack jurisdiction to act in probate matters. 392 F.3d
1118, 1121 (9th Cir. 2004). Although "it is true that a federal court has no jurisdiction
to probate a will or administer an estate . . . it has been established by a long series of
decisions that federal courts . . . have jurisdiction to entertain suits in favor of
creditors" and others against a decedent's estate to establish their claims as long as the
federal court does not interfere with the probate proceedings in state courts. Markham
v. Allen, 326 U.S. 490, 494, 66 S. Ct. 296, 298 (1946). The case relied upon by Mrs.
Koval was reversed and remanded by the United States Supreme Court, which held
that a ruling of a Texas probate court that it retained exclusive jurisdiction over all of
a widow's claims against the decedent's stepson could not deprive a federal court of
jurisdiction over the widow's tort claim against the stepson asserted in her bankruptcy
proceeding. Marshall v. Marshall, 547 U.S. 293, 126 S. Ct. 1735 (2006). While a
federal court is proscribed from exercising its jurisdiction to disturb or to affect the
possession of property in the custody of a state court, it may exercise its jurisdiction
to adjudicate matters outside those confines and otherwise within federal jurisdiction. 
Id. at 310-11, 1747-48. 

 Here, the bankruptcy court's judgment was part of a "core proceeding." Core
proceedings include, but are not limited to, determinations of the validity, extent, or
priority of liens. 28 U.S.C. § 157(b)(2)(K) (2006). Mrs. Koval filed a voluntary
petition for bankruptcy. She held out the property as her own in fee simple. That
claim was subject to the debts against the estate. See Tex. Prob. Code Ann. § 37
(Vernon 2003 and Supp. 2007) ("[W]henever a person dies intestate, all of his estate
vests immediately in his heirs at law, but with the exception aforesaid shall still be
liable and subject in their hands to the payments of the debts of the intestate. . . ."). 
Kirkland initiated proceedings in the bankruptcy court to determine the validity,
extent, and priority of the lien against the property. Mrs. Koval's voluntary filing with
the bankruptcy court authorized the bankruptcy court to exercise its jurisdiction over
the "core proceeding" to determine the validity of any liens on property she claimed
as her own. (1) See Sigmar v. Anderson, 212 S.W.3d 789, 794 (Tex. App.--Austin 2006,
no pet.). The bankruptcy court had subject matter jurisdiction. Issue two is overruled.

ATTORNEY'S FEES

 In issues three and four, Mrs. Koval contends the trial court erred in awarding
Kirkland attorney's fees under section 315 of the probate code. Tex. Prob. Code
Ann. § 315(c) (Vernon 2003) (the estate shall pay "all costs incurred in the probate
court with respect to claims . . . rejected, but established by suit. . . .") . 

 Section 315 does not provide for attorney's fees to be taxed against the estate. 
Kirkland agrees that the term "costs" does not generally include attorney's fees in the
statutory context. See Baumann v. Willis, 721 S.W.2d 535, 538 (Tex. App.--Corpus
Christi 1986, no writ) ("'costs' simply does not include attorney's fees"); Am. Airlines,
Inc. v. Swest Inc., 707 S.W.2d 545 (Tex. 1986). Nevertheless, Kirkland argues that
the Legislature's intent in passing section 315--"to discourage administrators from
denying claims without a valid factual or legal basis"--should outweigh the general
proposition that costs do not include attorney's fees. 

 The probate code does provide for the award of attorney's fees in some
circumstances. See, e.g., Tex. Prob. Code Ann. § 149C(d) (Vernon Supp. 2007)
(authorizing payment out of the estate for costs and expenses, "including reasonable
attorney's fees and expenses," incurred "by the party seeking removal incident to
removal of an independent executor"); Tex. Prob. Code Ann. § 245 (Vernon Supp.
2007) (authorizing an award of attorney's fees in actions against administrators who
neglect the performance of their duties). Under the rules of statutory construction, we
must presume that the Legislature was aware of its decision to exclude attorney's fees
under section 315 of the probate code. See Acker v. Tex. Water Comm'n, 790 S.W.2d
299, 301 (Tex. 1990). The Legislature's express inclusion of a right in another section
of the probate code suggests that it did not intend to include that right elsewhere. See
Dallas Merchant's & Concessionaire's Ass'n v. City of Dallas, 852 S.W.2d 489, 493
n.7 (Tex. 1993) (discussing the doctrine of expressio unis est exclusio alterius--the
expression of one thing is the exclusion of another). If the Legislature had intended
to include attorney's fees under this provision, it would have done so. Consequently,
we hold that the award of attorney's fees under section 315 of the Probate Code as
found by the trial court was error.

 However, Kirkland argued in its supplemental motion for summary judgment
that attorney's fees were appropriate under either probate code section 315 or under
section 38.001 of the Civil Practice and Remedies Code. Tex. Civ. Prac. & Rem.
Code Ann. § 38.001 (Vernon 1997). A summary judgment may be affirmed on any
of the movant's theories which has merit. See Cincinnati Life Ins. Co. v. Cates, 927
S.W.2d 623, 627 (Tex. 1996). 

 In Cincinnati Life, the court stated:

 

 We hold that courts of appeals should consider all summary
judgment grounds that the trial court rules on and the movant
preserves for appellate review that are necessary for final
disposition of the appeal when reviewing a summary judgment. 
We further conclude that the appellate court may consider other
grounds that the movant preserved for review and trial court did
not rule on in the interest of judicial economy. 


Id. (emphasis ours). Mrs. Koval does not challenge the court's award of attorney's
fees under the alternative grounds of section 38.001 directly on its merits. Mrs. Koval
does challenge the award under section 38.001 on the basis that the trial court's
written judgment does not mention section 38.001, but only the probate code. (2)
 
Kirkland briefs the point on the merits. 

 However, as previously stated, summary judgments must stand or fall on their
own merits, and the non-movant's failure to answer or to respond cannot supply by
default the summary-judgment proof necessary to establish the movant's right. Clear
Creek, 589 S.W.2d at 678. Despite the fact that Mrs. Koval failed to address the
application of section 38.001 on the merits before us or in the trial court, we consider
it because it was raised in the motion for summary judgment and discussed before the
court. We agree that the record supports the trial court's findings. The evidence
submitted to the trial court supporting Kirkland's claim for rendered services,
performed labor, and materials furnished in the repair of the Newey home and the
claim's nexus with the estate has been proven as a matter of law.

 Issues three and four are overruled.KIRKLAND'S CROSS-ISSUES

 In its first cross-issue, Kirkland seeks a remand of this cause for the award of
and calculation of reasonable attorney's fees incurred for this appeal. Kirkland has
waived its right to pursue its appellate attorney's fees by failing to present evidence
or to obtain a ruling on those fees in the trial court. Everest Exploration, Inc. v. URI,
Inc. 131 S.W.3d 138, 145 (Tex. App.--San Antonio 2004, no pet.); City of San
Antonio v. Int'l Ass'n of Fire Fighters, Local 624, 539 S.W.2d 931, 935 (Tex. Civ.
App.--El Paso 1976, no writ). An appellee that does not offer any evidence as to
future attorney's fees and does not procure a finding and judgment thereon waives
any such recovery. Loomis Constr. Co. v. Matijevich, 425 S.W.2d 39 (Tex. Civ.
App.--Houston [14th Dist.] 1968, no writ); see also Int'l Sec. Life Ins. Co. v. Spray,
468 S.W.2d 347 (Tex. 1971). We overrule cross-issue number one.

 In its second cross-issue, Kirkland seeks to have the costs on appeal taxed
against Mrs. Koval. In a civil case, the court of appeal's judgment should award the
appellate costs to the prevailing party. Tex. R. App. P. 43.4. On appeal, costs include
(1) the filing fees paid to the clerk of the court of appeals, (2) the fee paid to the trial-clerk for the preparation of the clerk's record, and (3) the fee paid to the court
reporter for preparation of the reporter's record. Tex. R. App. P. 51.1; See WesTech
Eng'g Inc. v. Clearwater Constructors, Inc., 835 S.W.2d 190, 206 (Tex.
App.--Austin 1992, no writ). Thus, these costs are taxed against Mrs. Koval in
accordance with the rules of appellate procedure.




CONCLUSION

 Having overruled each issue presented, we affirm the trial court's judgment.


 Davie L. Wilson (3)

 Justice


Panel consists of Justices Alcala, Hanks, and Wilson.



1. The scope of the property included in the bankruptcy estate is broad. United
States v. Whiting Pools, Inc., 462 U.S. 198, 204-05, 103 S. Ct. 2309, 2313 (1983);
Sigmar v. Anderson, 212 S.W.3d 789, 794 (Tex. App.--Austin 2006, no pet.).; After
a debtor files a bankruptcy proceeding, the determination of what constitutes property
of the estate is a core proceeding over which the bankruptcy court has exclusive
jurisdiction. See In re Duval Ocunty Ranch Co., 167 B.R. 848 (Bankr. S.D. Tex.
1994) (citing Slay Warehousing Co. v. Modern Boats, Inc., 775 F.2d 619, 620 (5th
Cir. 1985)). 

 
2. We note that at the hearing on attorney's fees, the Court stated:


Okay. As I recall what the bankruptcy court did was it made a ruling of law,
but they can't award things in Probate Court, so it would be necessary [sic] the
claimant is denied to come in and apprise the probate court -- they ruled as to
an issue of law, but that is not self-executing. Okay . . . So the only way you
can go through to get a claim successfully done in Probate Court is to follow
the claims procedure. And since the underlying suit under [sic] Civil Practices
and Remedies would provide for attorney's fees, attorney's fees are warranted,
and they are granted.

3. The Honorable Davie L. Wilson, retired Justice, Court of Appeals, First District of Texas
at Houston, participating by assignment.