# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-04-00599-CV

**Dymra Henderson, Appellant**

**v.**

**William C. Chambers; Frank Brown, Esq.; Armbrust, Brown & Davis, LLP;
Strasburger & Price and Timothy S. Chambers, Appellees**

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 353RD JUDICIAL DISTRICT
NO. GN103183, HONORABLE W. JEANNE MEURER, JUDGE PRESIDING**

## O P I N I O N

Dymra Henderson appeals a summary judgment granted in favor of her ex-husband, Timothy Chambers, her ex-husband's father, William C. Chambers, and their attorneys, Frank Brown, Ambrust & Brown, LLP, and Strasburger & Price, LLP (collectively, "Defendant Attorneys").[1]  Henderson alleged that Timothy Chambers, William Chambers, and the Defendant Attorneys conspired to defraud Henderson out of her community property interest in property that was subject to a June 1998 agreed divorce decree.  We conclude that this lawsuit is an impermissible collateral attack on the divorce decree and affirm the summary judgment.

---

[1]  Summary judgment was also granted in favor of defendant William Gurasich, but this Court granted Henderson's motion to voluntarily dismiss her appeal as it pertains to the judgment favoring Gurasich on April 29, 2005.

Henderson and Timothy Chambers were married September 5, 1987. On April 6, 1993, Timothy Chambers and William Chambers created the BC Partnership to develop a piece of real property known as Moore's Crossing. In 1995, Timothy Chambers and William Chambers hired Defendant Attorneys to draft an "Amended and Restated Partnership Agreement" for the BC Partnership. The relevant difference between the original partnership agreement and the amended agreement is that the amended agreement recited that Timothy Chambers owned his interest in BC Partnership "as his sole and separate property." At the same time the amended agreement was drafted and signed, Defendant Attorneys prepared a gift letter reciting a gift of $13,000 to Timothy Chambers from his parents, William and Rosalie Chambers. Both the amended partnership agreement and the gift letter were backdated to April 6, 1993, the original date of the BC Partnership's formation.

Henderson filed for divorce from Timothy Chambers on October 20, 1997. Among her allegations in the 1997 divorce action were claims that Timothy Chambers had attempted to defraud Henderson out of her share of community property by fraudulently recharacterizing community property as his separate property. More specifically, Henderson claimed that Timothy Chambers conspired with his parents to defraud her of her interest in Moore's Crossing and fraudulently manipulated documents relating to the BC Partnership to accomplish the recharacterization. Consequently, these allegations were in controversy as part of the divorce dispute in 1997-98.

Henderson and Timothy Chambers settled their property dispute in April 1998 and signed a Memorandum of Understanding that gave whatever interests either party had in the BC Partnership and the related entities having to do with Moore's Crossing to Timothy Chambers. This

settlement was later memorialized in the agreed final divorce decree entered by the district court on June 29, 1998, which awarded Timothy Chambers "[a]ny and all business interest that either party may have in any of the following companies, partnerships, or other entities: Valeo, Moore's Crossing, B.C. Partnership, S.R. Development, and W.G.T.C."[2]

Henderson filed this lawsuit on September 28, 2001, against William Chambers and Defendant Attorneys alleging that they defrauded Henderson of her community interest in the assets awarded to Timothy Chambers in the 1998 divorce decree relating to the BC Partnership/Moore's Crossing. Specifically, she pointed to the 1995 gift letter and amendments to the BC Partnership agreement claiming that they fraudulently recharacterized community assets as Timothy Chambers's separate property.

The defendants filed their original motion for summary judgment March 4, 2004. Henderson amended her petition and added Timothy Chambers as a defendant April 5, 2004. Henderson alleged the following causes of action in her amended petition: (1) fraud and conspiracy, (2) knowing participation in breach of fiduciary duty, (3) conspiracy, (4) negligent misrepresentation, (5) breach of the duty of good faith and fair dealing, and (6) statutory fraud. She asserted separate, individual claims against Timothy Chambers for breach of fiduciary duty and against the Defendant Attorneys for negligence. On April 6, 2004, Henderson also filed a separate lawsuit in the form of an Original Petition for Bill of Review directly attacking the 1998 divorce decree as having been procured by fraud on the part of the same defendants. This bill of review action is a separate cause in the trial court and is not before us in this appeal. The defendants filed an amended motion for

---

[2] These entities were all affiliated with BC Partnership's joint venture known as Moore's Crossing.

3

summary judgment on April 8, 2004, addressing the new allegations made in Henderson's amended petition. The defendants sought summary judgment on several grounds, including that Henderson's 2001 lawsuit constituted an impermissible collateral attack on the 1998 divorce decree. On August 20, 2004, the trial court granted summary judgment in favor of all of the defendants without designating a particular basis for the ruling.

**Standard of Review**

We review the summary judgment de novo. *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 156 (Tex. 2004). To prevail on a motion for summary judgment, the movant must show that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. *See Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 217 (Tex. 2004) (citing Tex. R. Civ. P. 166a(c)). When reviewing a summary judgment, we take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Two Thirty Nine Joint Venture*, 145 S.W.3d at 157 (citing *Southwestern Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex. 2002)). Because the district court's order granting summary judgment does not specify the basis for the ruling, we will affirm the summary judgment if any of the theories presented to the trial court and preserved for appellate review is meritorious. *See Knott*, 128 S.W.3d at 217.

**Collateral Attack**

The defendants argue that this lawsuit is, as a matter of law, an impermissible collateral attack on the 1998 divorce decree. Collateral attacks on final judgments are generally

4

disallowed because it is the policy of the law to give finality to the judgments of the courts. *Tice v. City of Pasadena*, 767 S.W.2d 700, 703 (Tex. 1989) (quoting *Crouch v. McGaw*, 138 S.W.2d 94, 96 (Tex. 1940)). A collateral attack, unlike a direct attack, does not attempt to secure the rendition of a single, correct judgment in place of the former judgment. *Ramsey v. Ramsey*, 19 S.W.3d 548, 552 (Tex. App.—Austin 2000, no pet.). Rather, it is an attempt to avoid the effect of a judgment in a proceeding not instituted for the purpose of correcting, modifying, or vacating the judgment, but in order to obtain some specific relief which the judgment currently stands as a bar against. *See id.*, *see also Biaza v. Simon*, 879 S.W.2d 349, 353 (Tex. App.—Houston [14th Dist.] 1994, writ denied)*.* Only a void judgment may be collaterally attacked. *Browning v. Placke*, 698 S.W.2d 362, 363 (Tex. 1985). A judgment is void only when it is apparent that the court rendering judgment "had no jurisdiction of the parties or property, no jurisdiction of the subject matter, no jurisdiction to enter the particular judgment, or no capacity to act." *Id.* (citing *Austin Indep. Sch. Dist. v. Sierra Club*, 495 S.W.2d 878, 881 (Tex. 1973)). Henderson does not argue in this case that the 1998 divorce decree is void. Therefore, if her allegations in this lawsuit are a collateral attack on the divorce decree, such an attack is improper.

We believe this case is controlled by the Texas Supreme Court's opinion in *Browning v. Prostok*, 165 S.W.3d 336, 346 (Tex. 2005). In *Prostok*, junior bondholders sued the former officers, directors, and financial advisors of National Gypsum Company in Texas state court for fraud and constructive fraud, breach of fiduciary duty, and civil conspiracy alleging that the defendants fraudulently undervalued National Gypsum during bankruptcy proceedings. *See id.* at 341. The alleged purpose of the fraud was to reduce the value of the company in bankruptcy so that

5

distributions to junior bondholders as part of the plan of reorganization would be lower and the interests acquired by senior bondholders in the company emerging from bankruptcy would ultimately be higher. *See id.* at 342. The problem with the state court lawsuit was that the issues relating to the alleged fraudulent activity on the part of the officers and directors had been litigated as a part of the chapter 11 plan confirmation proceedings in the bankruptcy court. *See id.* at 349. The bankruptcy court considered these claims—brought by a committee of bond and trade unsecured creditors appointed by the trustee[3]—and expressly found that the committee did not meet its burden on the issue. *Id.* The bankruptcy court ultimately entered an order confirming the plan of reorganization in March 1993, effectively denying the relief sought by the bond and trade unsecured creditors committee on the fraud claims. *Id.*

In October 1995, Jeff Prostok, on behalf of himself and the other junior bondholders, filed a state court lawsuit against the former officers and directors of National Gypsum Company alleging breach of fiduciary duty, fraud, constructive fraud, and civil conspiracy in connection with the valuation of the company in the bankruptcy proceeding. *See id.* at 341. The factual basis of the fraud claims in the state court lawsuit was the same as for the claims that had been made in the bankruptcy court in the course of challenging the plan of reorganization. The *Prostok* defendants moved for summary judgment on the basis that the state court claims were barred because they were a collateral attack on the bankruptcy court's order confirming the plan of reorganization. *See id.* at

---

[3] The bond and trade unsecured creditors committee appointed by the bankruptcy trustee represented the interests of the junior bondholders, including those that filed the subsequent state court lawsuit, with respect to the fraud claims in the bankruptcy proceeding.

343. The *Prostok* plaintiffs argued that the state court claims were based on extrinsic fraud by the defendants as opposed to intrinsic fraud, and therefore, the claims were not an impermissible collateral attack on the bankruptcy court order. The supreme court has recognized that when a party does not seek to set aside a prior judgment, but instead brings suit based on extrinsic fraud, the action is not a collateral attack. *See id.* at 347 (citing *State v. Durham*, 860 S.W.2d 63, 67 (Tex. 1993)). Thus, the central issue in *Prostok* was whether the state court fraud claims were intrinsic or extrinsic to the bankruptcy court confirmation order. The supreme court held that the claims filed by the junior bondholders in the subsequent state court lawsuit were intrinsic to the bankruptcy court's confirmation order and, therefore, constituted an impermissible collateral attack on the prior order. *Id.* at 349.

In this case, Henderson relies on the same theory as the *Prostok* plaintiffs—that, although her claims are related to matters that were at issue in the previous divorce case, her claims are extrinsic to the 1998 divorce decree and, thus, do not constitute a collateral attack on the decree. Consequently, the resolution of whether Henderson's claims are an impermissible collateral attack on the 1998 divorce decree turns on whether her claims in this case are extrinsic or intrinsic to the decree.

In *Prostok*, the supreme court examined the distinction between claims of intrinsic and extrinsic fraud and laid out the framework for distinguishing between the two. *See id.* at 347-48. Extrinsic fraud is fraud that denies a losing party the opportunity to fully litigate at trial all the rights or defenses that could have been asserted. *Id.* at 347 (citing *Montgomery v. Kennedy*, 669 S.W.2d

7

309, 312 (Tex. 1984)). It generally includes wrongful conduct occurring outside of the adversarial proceedings and must be collateral to the matter tried and not something that was actually or potentially in issue. *Id.* Intrinsic fraud, by contrast, "relates to the merits of the issues [that] were presented and presumably were or should have been settled in the former action." *See id.* at 347-348 (quoting *Tice*, 767 S.W.2d at 702). Intrinsic fraud includes fraudulent instruments, perjured testimony, or any matter which was actually presented to and considered by the trial court in rendering judgment. *Id.* at 348. More importantly for this case, the supreme court noted that "when the fraudulent acts themselves are in issue, or could have been in issue, in the prior proceeding, the fraud is intrinsic." *Id.* The court elaborated on this point:

> This Court has noted that while concealment of a material fact by a fiduciary charged with the duty of full disclosure generally is extrinsic fraud, where "the alleged specific fraudulent acts were known and *in issue* in the prior suit, the fraud is intrinsic."
>
> . . . .
>
> [A]n attack upon a judgment based on intrinsic fraud is not allowed because the fraudulent conduct may be properly exposed and rectified within the context of the underlying adversarial process itself. In contrast, a collateral attack on a judgment on the basis of extrinsic fraud is allowed because such fraud distorts the judicial process to such an extent that confidence in the ability to discover the fraudulent conduct through the regular adversarial process is undermined.

*Id.* (quoting *Montgomery*, 669 S.W.2d at 313-14). Finding that the alleged misrepresentation of the value of National Gypsum was a material issue presented to and considered by the bankruptcy court in rendering its order confirming the plan of reorganization, the supreme court held that the alleged fraudulent conduct at issue in the state court lawsuit was intrinsic to the bankruptcy court

8

confirmation order. *See id.* at 349. The alleged fraudulent conduct was intrinsic to the bankruptcy court order even in the face of the allegation that the defendants had misled the bankruptcy court. The essential point in this analysis is if the conduct at issue in the current suit was at issue or could have been at issue in the previous suit, the claims are intrinsic to the prior judgment. Any attempt to relitigate the claims in a new lawsuit, even if based on new information, constitutes a collateral attack on the prior judgment.

In this case, Henderson is pursuing causes of action based on factual allegations that the Defendants fraudulently recharacterized her community interest in certain marital property as the separate property of Timothy Chambers. Henderson made the same claims with respect to the same property in the 1997-98 divorce case. The record reflects that the alleged fraudulent conduct at issue in this case was known and at issue in the divorce proceeding. The Original Petition for Divorce filed by Henderson in 1997 expressly alleged fraud by Timothy Chambers with respect to Henderson's community property rights. More specifically, Henderson alleged that Timothy Chambers had accumulated property during the marriage and arranged through fraudulent documentation for that property to appear to be Timothy Chambers's separate property when, in fact, it was community property. The divorce petition specifically named Moore's Crossing Joint Venture and BC Partnership as entities used by Timothy Chambers to defraud Henderson of her interest in community property and alleged that "an actual or constructive fraud has been performed on [Henderson] by the actions of [Timothy Chambers] (alone or in conjunction and conspiracy with the other persons) and requests that the Court impose a constructive trust on the partnerships and declare the ownership of the partnerships to be partially lodged in the community estate."

9

Henderson also gave the following testimony in her deposition in the divorce case:

Q: In Roman Numeral Paragraph VII of your original petition in this divorce action, you plead that "Petitioner says that property has been accumulated perhaps in the name of respondent or under documents that purport to create separate property of the respondent." What property are you talking about?

A: Obviously, Moore's Crossing, BC Partnership, that whole ordeal.

Q: What attempted fraud are you asserting?

A: [Timothy Chambers] and his dad, their conspired effort. I guess his mother, too, because the so-called declaration of gift includes his mother and I found out later that she knew about it, so—

Q: And you see a fraud in that Dad couldn't give this to Tim?

A: No, I see a fraud in that originally it was our community property and our retirement plan and two years later, when the money came, then it became secretly his separate property.

Q: What was originally yours?

A: My community interest in the BC Partnership interest.

When asked in written interrogatories in the divorce case to explain how Timothy Chambers committed fraud on her community property rights, Henderson answered that Timothy Chambers had "conspired with his parents to take my share of the community interest in Moore's Crossing Joint Venture." The record also contains a letter dated October 16, 1997 (written four days before the original divorce petition was filed) from Henderson to Timothy Chambers's mother, Rosalie, in which Henderson stated "[Timothy Chambers and William Chambers] have paid very good lawyers to obliterate my community interest in Moore's Crossing."

Based on this record, we are persuaded that the conduct Henderson complains of in this case was known at the time of the 1997-98 divorce action, was actually litigated as part of the

10

divorce action, was expressly part of the mediated settlement agreement between Henderson and Timothy Chambers in that action, and was adjudicated as part of the agreed decree of divorce. Thus, we find that the claims of fraudulent conduct at issue in this lawsuit were intrinsic to the 1997-98 divorce action and are barred as an impermissible collateral attack on the divorce decree.

Henderson argues that the fact that she did not sue the Defendant Attorneys in the divorce action distinguishes her claims against the attorneys from the rule articulated in *Prostok*. However, the question of whether allegations of fraud are intrinsic or extrinsic to a prior judgment does not hinge exclusively on who the parties were to the prior judgment. It is a question of whether the conduct being complained of was known or could have been known, or was at issue or potentially at issue in the prior lawsuit. *See Prostok*, 165 S.W.3d at 347-48. This is consistent with the "transactional approach" to claim preclusion adopted by the Texas Supreme Court in *Barr v. Resolution Trust Corp.*, 837 S.W.2d 627 (Tex. 1992). In *Barr*, the supreme court held "[a] subsequent suit will be barred if it arises out of the same subject matter of a previous suit and which through the exercise of due diligence, could have been litigated in a prior suit." *Barr*, 837 S.W.2d at 630. The supreme court has also recognized that the principle of claim preclusion adopted in *Barr* applies to tort claims litigated as part of a divorce proceeding. *Twyman v. Twyman*, 855 S.W.2d 619, 624-25 (Tex. 1993).

Henderson knew of, complained about, and placed in issue her allegations relating to the possible fraudulent recharacterization of her community property interest in BC Partnership/Moore's Crossing while litigating with Timothy Chambers in their divorce. Henderson alleged in the divorce action that Timothy Chambers acted in a civil conspiracy with others to defraud her of her community interest in the partnerships. She was aware of the alleged fraudulent

11

conduct. She was also aware of a potential claim that the alleged fraud was the product of a conspiracy of actors in addition to her ex-husband. She specifically asserted in writing that the fraud was accomplished with the assistance of her ex-husband's lawyers. Consequently, the judgment in the divorce proceeding stands as a bar to any claims by Henderson that are based on the same facts as those at issue in the divorce proceeding, including the claims against the Defendant Attorneys in question here. *Barr*, 837 S.W.2d at 630.

**Conclusion**

We conclude that the issue of whether Henderson's community property interest in the partnerships in question in this lawsuit had been fraudulently recharacterized as her ex-husband's separate property was known and actually litigated during the 1997-98 divorce proceeding between Henderson and her ex-husband Timothy Chambers. We hold that the claims of fraudulent conduct by Timothy Chambers, William Chambers, and Defendant Attorneys in this lawsuit were, therefore, intrinsic to the divorce action. Consequently, Henderson's claims in this case constitute an impermissible collateral attack on the 1998 agreed divorce decree. We affirm the judgment of the trial court.

_____

G. Alan Waldrop, Justice

Before Chief Justice Law, Justices Pemberton and Waldrop

Affirmed

Filed: March 31, 2006