# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-09-00009-CV

**Brian Mark Pribyl, Appellant**

**v.**

**Kathleen Rae Pribyl, Appellee**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 353RD JUDICIAL DISTRICT
## NO. D-1-FM-04-000101, HONORABLE JOHN K. DIETZ, JUDGE PRESIDING

## O P I N I O N

Appellee Kathleen Rae Pribyl filed suit in district court against her ex-husband, appellant Brian Mark Pribyl, asserting a breach of contract claim. She filed this claim post-judgment in the same cause number as the parties' previous and final divorce. Kathleen alleged that Brian breached a collaborative law agreement they had entered into during the course of their divorce proceedings. The matter was tried to the bench, and the district court entered judgment in favor of Kathleen. We hold that Kathleen's breach of contract claim in this case is an attempt to re-allocate marital property that has already been divided and awarded pursuant to a final divorce decree, and is an impermissible collateral attack on the divorce decree. Therefore, her breach of contract claim is barred by res judicata. We reverse and render.

On January 7, 2004, Brian Pribyl filed suit in the 353rd Judicial District Court for divorce from his wife Kathleen. On January 21, 2004, the Pribyls and their attorneys executed

a Collaborative Law Participation Agreement. *See* Tex. Fam. Code Ann. § 6.603 (West 2006). The collaborative law agreement provided, in relevant part, as follows:

> The parties and their lawyers agree to make full disclosure of the nature, extent and value of the parties' income, and their assets and liabilities, including any factors or developments which may affect any aspect of these components of the case. . . . Participation in the Collaborative Law process, and the settlement reached, is based upon the assumption that both parties have acted in good faith and have provided complete and accurate information to the best of their abilities.

After pursuing the collaborative process and failing to reach an agreement, the parties participated in a mediation. *See id.* § 6.602(a) (West 2006). The mediation resulted in a settlement agreement and on May 21, 2004, the Pribyls entered into a "Mediated Settlement Agreement" under which they "settled all issues relating to their divorce." On September 17, 2004, the district court entered a final decree of divorce in the divorce proceeding in accordance with the terms of the settlement agreement. *See id.* § 6.602(c).

In May or June of 2007, Kathleen learned that Brian had been awarded 2,000 stock options by his employer at a time when the 2004 divorce case was pending.[1] Neither Brian nor his attorney informed Kathleen or her attorney of the existence of these stock options during either the collaborative process or the mediation.[2] Kathleen and her attorney were aware of other stock options that had been granted to Brian by his employer on previous occasions. These options were the

---

[1] The stock options were subject to a vesting schedule under which 20 percent would vest on April 23 of each year from 2007 to 2011.

[2] Brian does not dispute that he was aware of the grant of stock options before the parties negotiated and signed off on the mediated settlement agreement. Brian also does not dispute that the Collaborative Law Participation Agreement required the parties to disclose the existence of assets and property.

subject of negotiations and were specifically allocated in the settlement agreement and later specifically awarded in the agreed divorce decree. The settlement agreement did not, of course, make a specific reference to the additional options granted to Brian during the pendency of the divorce because these options were not disclosed to Kathleen or her attorney. However, the agreed divorce decree contained the following provision relating to unspecified stock options:

> BRIAN MARK PRIBYL is awarded . . . [a]ll sums, whether matured or unmatured, accrued or unaccrued, vested or otherwise, together with all increases thereof, the proceeds therefrom, and any other rights related to any . . . employee stock option plan . . . or other benefits existing by reason of the husband's past, present, or future employment . . . .

Therefore, under the terms of the 2004 agreed divorce decree, Brian was awarded all unspecified stock options, including the undisclosed 2004 stock options granted during the pendency of the divorce.

On September 26, 2007, Kathleen filed a petition for "post-divorce division of property, breach of contract, and fraud" in the same cause number as the 2004 divorce proceeding.[3] Kathleen's claims were based on Brian's alleged violation of the collaborative law agreement's provision requiring full disclosure of assets and property. Following a bench trial, on November 25, 2008, the district court entered a Final Order and Judgment awarding Kathleen 50 percent of the previously undisclosed stock options, as well as pre- and post-judgment interest, attorneys' fees, and costs. The 2008 judgment made no mention of, and did not purport to amend or alter, the 2004 agreed judgment entered in the same cause. Brian appeals the 2008 judgment.

---

[3] In her amended petition—Kathleen's live pleadings at the time of trial—Kathleen asserted only a breach of contract claim.

3

Brian contends that this lawsuit is an impermissible attack on a prior judgment. The doctrine of res judicata applies to a final divorce decree to the same extent that it applies to any other final judgment. *Baxter v. Ruddle*, 794 S.W.2d 761, 762 (Tex. 1990). A judgment finalizing a divorce and partitioning the property is res judicata with respect to any attempt to relitigate the division of property at a later time. *See Day v. Day*, 603 S.W.2d 213, 215 (Tex. 1980); *Moreno v. Alejandro*, 775 S.W.2d 735, 738 (Tex. App.—San Antonio 1989, writ denied); *see also* Tex. Fam. Code Ann. § 9.007(a) (West 2006) ("A court may not amend, modify, alter, or change the division of property made or approved in the decree of divorce or annulment.").

The division of the parties' community property was at issue in the 2004 divorce proceedings, and at least some portion of the value of the undisclosed 2004 stock options was community property. The 2004 agreed judgment unambiguously awarded all unspecified stock options—which would include the 2004 options—to Brian. The petition in this suit was filed in the same cause number as the 2004 judgment. It does not seek to amend or alter the 2004 judgment. Nonetheless, at issue in this proceeding is whether Kathleen was entitled to any portion of the value of the 2004 stock options and whether she should recover damages for failing to have had an opportunity to negotiate for this value during the 2004 divorce. The damages sought by Kathleen in this suit are the amounts that she claims she would have received had the 2004 judgment divided the 2004 stock options in a manner similar to the other stock options specifically partitioned instead of in the manner provided by the general provision awarding 100 percent of unspecified options to Brian. Kathleen's breach of contract claim is, therefore, an attempt to modify the property division set out in the original agreed divorce decree without modifying or altering the original decree. Such claims are barred by res judicata. *See Brown*

4

*v. Brown*, 236 S.W.3d 343, 348 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (if plaintiff seeks merely to claim share of asset already divided by divorce decree, post-divorce property division action is barred by res judicata).

Under certain circumstances, an attack on a prior judgment may be permissible if it alleges fraud in the opposing party's obtaining the judgment and seeks to impose a constructive trust on amounts awarded to the opposing party under the judgment. *See State v. Durham*, 860 S.W.2d 63, 67 (Tex. 1993). Such an attack on a final judgment may be maintained only if the alleged fraudulent conduct is "extrinsic" to the judgment. *See Browning v. Prostok*, 165 S.W.3d 336, 347 (Tex. 2005); *see also Henderson v. Chambers*, 208 S.W.3d 546, 552-53 (Tex. App.—Austin 2006, no pet.) (examining allegations of fraud to determine whether intrinsic or extrinsic).[4] We need not address whether Kathleen's claims in this case involve extrinsic or intrinsic fraud, however, because Kathleen does not base her claims on fraud.[5] Kathleen pleaded and tried only a breach of contract claim based on an alleged breach of the collaborative law agreement. Kathleen does not allege that Brian's actions constituted fraudulent conduct extrinsic to the 2004 judgment, thereby subjecting

---

[4] Extrinsic fraud is fraud that denies a losing party the opportunity to fully litigate at trial all the rights or defenses that could have been asserted. *Browning v. Prostok*, 165 S.W.3d 336, 347 (Tex. 2005); *see also Montgomery v. Kennedy*, 669 S.W.2d 309, 313 (Tex. 1984) ("[T]he concealment of a material fact by a fiduciary charged with the duty of full disclosure is extrinsic fraud."). Intrinsic fraud relates to the merits of the issues that were presented and presumably were or should have been settled in the former action. *Id.* at 347-48 (quoting *Tice v. City of Pasadena*, 767 S.W.2d 700, 702 (Tex. 1989)).

[5] We also do not want to be read as condoning the actions of Brian in this case. Whether intentional or not, the failure to disclose the 2004 options during the divorce negotiations was significant. Had the stock options been disclosed, there is little doubt at least some portion of their value would have gone to Kathleen in the settlement. While the finality of a valid judgment and the passage of time might hamper an effective remedy in a situation like this, they do not change the fact of the failure to disclose.

that judgment to a permissible attack at this point. Consequently, Kathleen's lawsuit constitutes an impermissible collateral attack on the 2004 agreed divorce decree.[6] *See Hagen v. Hagen*, 282 S.W.3d 899, 902 (Tex. 2009) ("Attempting to obtain an order that alters or modifies a divorce decree's property division is an impermissible collateral attack.").

We note that once the trial court's plenary power has expired, the appropriate vehicle for a *direct* attack on a judgment is to file a bill of review in the trial court.[7] *See King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003).

> On expiration of the time within which the trial court has plenary power, a judgment cannot be set aside by the trial court except by bill of review for sufficient cause, filed within the time allowed by law; provided that the court may at any time correct a clerical error in the record of a judgment and render judgment nunc pro tunc under Rule 316, and may also sign an order declaring a previous judgment or order to be void because signed after the court's plenary power had expired.

Tex. R. Civ. P. 329b(f). A petitioner in a bill of review must ordinarily plead and prove (1) a meritorious defense to the cause of action alleged to support the judgment, (2) that the petitioner was prevented from making by the fraud, accident, or wrongful act of his opponent, and (3) that the petitioner was not negligent. *King Ranch*, 118 S.W.3d at 751-52.

---

[6] A collateral attack, unlike a direct attack, does not attempt to secure the rendition of a single, correct judgment in place of the former judgment. *Ramsey v. Ramsey*, 19 S.W.3d 548, 552 (Tex. App.—Austin 2000, no pet.). Rather, it is an attempt to avoid the effect of a judgment in a proceeding not instituted for the purpose of correcting, modifying, or vacating the judgment, but in order to obtain some specific relief against which the judgment currently stands as a bar. *Browning*, 165 S.W.3d at 346.

[7] A litigant does not need to comply with the bill-of-review procedures in order to make a direct attack on a judgment in which the court did not even possess the "jurisdictional power" to hear the case and render judgment at all. *See McEwen v. Harrison*, 345 S.W.2d 706, 710-11 (Tex. 1961). There is no allegation in this case that the trial court did not have the jurisdictional power to enter the 2004 agreed divorce decree.

However, Kathleen did not elect to pursue a bill of review or any other direct attack on the 2004 agreed divorce decree. Rather, she alleged a breach of the collaborative law agreement as a means of altering the effect of the 2004 agreed divorce decree.[8] This type of attack on an otherwise valid judgment is not permitted. The problematic nature of Kathleen's claims in this proceeding is illustrated by the fact that, as the record stood after the trial court's 2008 judgment, there was a final judgment from 2004 awarding the stock options at issue to Brian and there was a judgment from 2008 awarding a portion of the same stock options to Kathleen. Neither judgment mentioned the other or attempted to modify or alter the other. The two judgments simply conflicted. This is precisely the type of situation that the doctrine of res judicata is designed to prevent. Consequently, we reverse and vacate the 2008 Final Order and Judgment entered by the district court in this cause and render judgment that Kathleen take nothing on her claim for breach of the collaborative law agreement.

_____

G. Alan Waldrop, Justice

Before Chief Justice Jones, Justices Pemberton and Waldrop

Reversed and Rendered

Filed:  March 11, 2010

_____

[8] Relief may or may not be available under a bill of review when the information allegedly concealed was available during the original divorce proceeding through normal discovery procedures. *See Kennell v. Kennell*, 743 S.W.2d 299, 300-01 (Tex. App.—Houston [14th Dist.] 1987, no writ). Because Kathleen has not pursued a bill of review in this case, we express no opinion regarding the effect of the voluntary disclosure provisions in a collaborative law agreement on a direct attack by bill of review of a judgment obtained after a failure to comply with the disclosure provisions in such an agreement.