# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-12-00667-CV

**Tammy Elliott Cocke, Appellant**

**v.**

**Simon Russell Elliott; Dolphus Jack Brown; Claire Clode-Baker; Elaine Bulger Brown;
Fred Am Rhein; Vantex Service Corporation; Active Deployment Systems, Inc.;
Pourquoi Pas, Inc.; and RonJon Rentals, Inc., Appellees**

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 98TH JUDICIAL DISTRICT
NO. D-1-FM-12-003243, HONORABLE RHONDA HURLEY, JUDGE PRESIDING**

## M E M O R A N D U M   O P I N I O N

Tammy Elliott Cocke appeals a final summary judgment and sanctions award that were the culmination of RICO[1] claims she had asserted against her ex-husband and numerous other defendants complaining of alleged conduct that impacted the property division in her divorce. She brings nine issues challenging the propriety of both the summary judgment and the sanctions award. We will overrule these issues and affirm the district court's judgment.

## BACKGROUND

The present appeal arises from the latest of multiple rounds of acrimonious litigation stemming from Cocke's divorce from appellee Simon Elliott. Although we will not belabor the

---

[1] Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961–1968 (2012).

details of this unfortunate history, we should nonetheless note some aspects of it that ultimately become relevant to the issues on appeal.

The saga began in 2007, when Simon[2] filed for divorce from Cocke in Hays County District Court (the Divorce Case). The Divorce Case would go on to be contentiously litigated over the course of several years, with disputed child-custody and property-division issues. The brewing property disputes potentially implicated ownership of a family business engaged in the provision of waste-management services, Vantex Service Corporation, which had been formed several years earlier by Simon's mother, appellee Claire Clode-Baker, and her then-husband, appellee Dolphus Jack (Jack) Brown.[3] Simon had subsequently acquired an interest in the business, and it had thereafter been converted into a limited partnership (Vantex Service, L.P.) and a limited liability corporation that served as managing partner (Vantex Service GP, LLC). In January 2008, Claire and Jack filed a declaratory-judgment suit in Travis County District Court against Simon and the Vantex entities seeking to establish their respective shares of ownership in the business (the Vantex Case). Cocke was subsequently joined as a defendant so as to ensure that she would be bound by the judgment. In the Vantex Case, Cocke took the position that Simon had purchased or acquired "all shares of Vantex stock . . . as community property" during their marriage, and conducted extensive discovery concerning the ownership of the Vantex entities and how such ownership had been acquired. However, in June 2009, the parties—including Cocke, who had the assistance of

---

[2] Because the appellees include relatives who share some common surnames, we will use first names as necessary to avoid confusion.

[3] The parties advise us that Jack died after the summary-judgment hearing in the present case but before the district court ruled on that motion. The litigation has proceeded as if he were still alive. *See* Tex. R. Civ. P. 156.

2

counsel—ultimately concluded the Vantex Case with an agreed judgment declaring, with respect to Simon, that he had owned only one of a total of forty shares of stock in Vantex Service Corporation and that his share had been converted into the same percentage ownership interest in each of the two new Vantex entities, i.e., a 2.5% limited partnership interest in Vantex Service, L.P., and a 2.5% membership interest in Vantex Service GP, LLC. Subsequently, in 2010, the business would be converted back into corporate form.

Meanwhile, back in the Divorce Case, Cocke had filed an April 2008 pleading in which she asserted claims against Simon, Claire, Jack, the two Vantex entities, and various other business entities that included, of relevance to this appeal, Texas Toilets of Texas, LP, and TLLC, LLC. The gravamen of these claims was that Simon, Claire, and Jack had engaged in a number of schemes involving the other entities in order to defraud or otherwise deprive her of her community interest in the Vantex business. Cocke pursued discovery in support of these theories. But following the June 2009 agreed judgment in the Vantex Case, the third-party defendants in the Divorce Case each moved to dismiss these claims with prejudice based on res judicata and collateral estoppel. Cocke (with the same counsel who had advised her regarding the agreed judgment in the Vantex Case) agreed to a July 2009 order granting these motions and dismissing the claims with prejudice.[4]

That same month, Simon and Cocke proceeded to a jury trial on their child-custody issues in the Divorce Case. After hearing evidence, the jury returned a verdict awarding Simon sole managing conservatorship of the children. Within a few days thereafter, Cocke (still with

---

[4] To be specific, Claire and Jack filed a motion to dismiss, and the Vantex entities and other third-party defendants filed a motion to dismiss that incorporated the arguments asserted in Claire and Jack's motion. Similarly, the district court signed an agreed order granting Claire and Jack's motion, to which the parties appended a Rule 11 agreement, signed by Cocke's counsel, that the other third-party defendants' "motion to dismiss will also be granted."

the same counsel) and Simon entered into a Rule 11 agreement that, with other similar agreements they had previously fashioned, resolved the property division. Among other things, the pair agreed that Texas Toilets, a community asset, would be awarded to Simon, who would then sell the asset, with a portion of the proceeds going to Cocke. They further agreed that the share of Vantex stock that Simon owned (the business had by now been converted back to the corporate form) was his separate property.

However, it turned out that the jury's verdict and the parties' Rule 11 agreement did not conclude the Divorce Case after all. Instead, Cocke, with new counsel, filed a motion for new trial as to both custody and the property division, citing "newly discovered evidence." Concerning the property division, Cocke summarized her complaints as follows:

> The general theme here is an effort by Simon Elliott and maybe others to deprive the community estate and [Cocke] of assets that should have been considered either in a property division, in assessing a claim of fraud on the community, or in regard to reimbursement related issues.

More specifically, Cocke accused Simon of failing to disclose assets in his sworn inventory—including a future appellee here, a company known as Active Deployment Systems, Inc., that, according to Cocke, "reduced the community property value of Texas Toilets." Cocke further alleged that Simon had used community funds to purchase new assets that were titled in others' names, and committed other forms of fraud on the community.

Following an evidentiary hearing, the district court denied Cocke's new-trial motion by written order and, on January 20, 2010, signed a final divorce decree consistent with the jury's verdict and the Rule 11 agreements regarding property division. To summarize, the decree awarded Cocke her personal property, a car, and proceeds from the anticipated sale of Texas Toilets, while

4

Simon received one hundred percent of Texas Toilets, "[a]ll other community property not awarded to [Cocke] herein,"and "[a]ll separate property belonging to [him], including but not limited to the one share of stock owned in Vantex Service Corporation." The decree additionally reflected that the parties had agreed to "waive all reimbursement and/or any other property and/or equitable claims, statutory or other, against the other party;" to "release . . . all claims, monetary or otherwise, that they may have made or could have made against the other party and/or their agents, as of the date of the divorce;" and that each "may acquire or sell other assets from separate property and shall fully own those assets free of claim from the other party." The decree further stated that it "is a final judgment . . . [that] disposes of all claims and all parties and is appealable."

Cocke did not perfect an appeal from the divorce decree, and that judgment became final for appellate purposes. However, she eventually filed a suit to modify the child-custody provisions (it seems that Simon had remarried) in Travis County District Court, where the children and both parents by then resided. And it was in that pending modification action that Cocke—after changing lawyers yet again—filed a December 2011 amended petition asserting RICO claims against her old adversaries Simon, Claire, Jack, and Vantex Service Corporation (Vantex), plus several new ones:

- Appellee Elaine Bulger Brown, to whom Jack had since remarried.

- Alistair Elliott, Simon's brother.[5]

- Appellee Fred Am Rhein, an accountant.

---

[5] Cocke identifies Alistair as an appellee in her brief, but never perfected an appeal against him. Consequently, to the extent Cocke purports to appeal the judgment as to Alistair, we dismiss the appeal for want of subject matter jurisdiction. In any event, as we explain below, she would not be entitled to appellate relief against him.

5

- Appellee Active Deployment Systems, Inc., a corporation that Cocke had referenced in her motion for new trial.

- Another corporation, appellee Pourquoi Pas, Inc.[6]

Cocke also implicated "non-defendant entities" that included Texas Toilets and the former Vantex entities that were predecessors to the current Vantex. The gravamen of Cocke's RICO claims was that Simon and his "association-in-fact" had engaged in a variety of schemes "to deprive [Cocke] of her lawful share of the couple's substantial community estate and to unlawfully preserve the bulk of that estate for [Simon]."

The appellees moved for summary judgment on the grounds that the new lawsuit constituted an impermissible collateral attack on the prior judgments in both the Vantex Case and the Divorce Case. Simon, Claire, Jack, and Vantex also asserted the additional ground of res judicata. In support of their motions, appellees presented extensive excerpts from the records in both of the prior cases. Following a hearing on the motion, the district court severed out Cocke's RICO claims into a separate cause and granted the summary judgment without specifying the grounds on which it relied.[7]

On the day after the district court signed the final summary judgment, the appellees filed a motion for sanctions against Cocke and the attorney who had prosecuted the RICO claims on

---

[6] Cocke also sued an entity known as RonJon Rentals, Inc., but subsequently non-suited it. She later identified RonJon as an appellee in her notice of appeal, as reflected in our caption, but does not assign any error. Cocke has thereby waived any appellate complaints regarding RonJon Rentals. *See Secure Comm, Inc. v. Anderson*, 31 S.W.3d 428, 431 (Tex. App.—Austin 2000, no pet.).

[7] Although the Hon. Rhonda Hurley would ultimately sign the final judgment in this case, the Hon. Orlinda Naranjo signed the summary-judgment order.

her behalf. The attorney moved to withdraw from her representation, and was permitted to do so. After an evidentiary hearing, the district court granted the appellees' motion and awarded sanctions in the amount of $50,000, imposed jointly and severally against both Cocke and her now-former attorney. Cocke (though not her former attorney) perfected an appeal from the final judgment.

## ANALYSIS

Cocke brings what are styled as nine issues. The thrust of her sixth through ninth issues is that the district court erred in granting summary judgment as to her RICO claims because they were not an impermissible collateral attack on the judgments in the Vantex Case or Divorce Case, nor barred by res judicata as to any of the appellees. In her first through fifth issues, Cocke urges that, in substance, the district court abused its discretion in imposing sanctions against her.[8]

**Summary judgment**

We review the district court's summary judgment de novo. *See Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). Summary judgment is proper when there are no disputed issues of material fact and the movant is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Western Invs., Inc. v. Urena*, 162 S.W.3d 547, 550 (Tex. 2005). We take as true all evidence favorable to the non-movant, and we indulge every reasonable inference

---

[8] Although Cocke is pro se at this juncture, we are bound to apply the same procedural and substantive standards to her as with other litigants. *See Mansfield State Bank v. Cohn*, 573 S.W.2d 181, 184–85 (Tex. 1978) ("There cannot be two sets of procedural rules, one for litigants with counsel and the other for litigants representing themselves. Litigants who represent themselves must comply with the applicable procedural rules, or else they would be given an unfair advantage over litigants represented by counsel."). Similarly, while we have attempted to address her contentions that, fairly construed, raise issues that are legally material to our disposition of this appeal, we have not belabored others. *See* Tex. R. App. P. 47.1; *see also id*. R. 38.1(i).

and resolve any doubts in the non-movant's favor. *Western Invs.*, 162 S.W.3d at 550. Because the summary judgment in this case does not specify the specific grounds on which the district court relied, we will affirm if any of the theories presented to the court and preserved for appellate review is meritorious. *See Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 217 (Tex. 2004).

We will begin by examining whether summary judgment was proper on the ground, common to all appellees, that Cocke's RICO claims amount to an impermissible collateral attack on the final judgments in the Divorce Case and/or the Vantex Case. A collateral attack is an attempt to avoid the binding force of a judgment in a proceeding not instituted for the purpose of correcting, modifying, or vacating the judgment, but in order to obtain some specific relief against which the judgment currently stands as a bar. *Browning v. Prostok*, 165 S.W.3d 336, 346 (Tex. 2005). A collateral attack is permitted only if the judgment whose effect is sought to be avoided is "void," which means that the court that rendered it had "no jurisdiction of the parties or property, no jurisdiction of the subject matter, no jurisdiction to enter the particular judgment, or no capacity to act." *Id*. This doctrine reflects strong jurisprudential policies favoring the finality of judgments. *See Henderson v. Chambers*, 208 S.W.3d 546, 549–50 (Tex. App.—Austin 2006, no pet.) (citing *Tice v. City of Pasadena*, 767 S.W.2d 700, 703 (Tex. 1989)).

Cocke's RICO claims do not purport to seek to vacate or modify (i.e., directly attack) the Vantex and Divorce judgments, but instead to avoid their effect in obtaining relief against which those judgments stand as a bar. As far as we can tell, Cocke does not contend that either prior judgment is void, and such an assertion would be without merit in any event. Instead, she relies on the principle that a suit based on fraud "extrinsic" to a judgment is not considered a collateral attack against the prior judgment. *See Browning*, 165 S.W.3d at 347. Extrinsic fraud is fraud that denies

8

a losing party the opportunity to fully litigate at trial all the rights or defenses that could have been asserted. *Id*. It generally includes wrongful conduct occurring outside of the adversarial proceedings and must be collateral to the matter tried and not something that was actually or potentially in issue. *Id*. It is the converse of intrinsic fraud, which "relates to the merits of the issues [that] were presented and presumably were or should have been settled in the former action." *See id*. at 347–48 (quoting *Tice*, 767 S.W.2d at 702). Intrinsic fraud includes fraudulent instruments, perjured testimony, or any matter which was actually presented to and considered by the trial court in rendering judgment. *Id*. at 348.

"The essential point in the analysis is if the conduct at issue in the current suit was at issue or could have been at issue in the previous suit, the claims are intrinsic to the prior judgment." *Henderson*, 208 S.W.3d at 552. Consequently, "[a]ny attempt to relitigate the claims in a new lawsuit, even if based on new information, constitutes a collateral attack on the prior judgment." *Id.* Similarly, "the question of whether allegations of fraud are intrinsic or extrinsic to a prior judgment does not hinge exclusively on who the parties were to the prior judgment," but instead "is a question of whether the conduct being complained of was known or could have been known, or was at issue or potentially at issue in the prior lawsuit." *Id.* at 553 (citing *Browning*, 165 S.W.3d at 347–48). In these respects, the distinction tracks the "transactional approach" to claim preclusion that has been adopted by the Texas Supreme Court. *Id.*; *see also Barr v. Resolution Trust Corp.*, 837 S.W.2d 627, 630 (Tex. 1992) ("A subsequent suit will be barred if it arises out of the same subject matter of a previous suit and which through the exercise of due diligence, could have been litigated in a prior suit.").

9

In *Henderson*, we applied these concepts to facts very similar to the present ones. 208 S.W.3d at 553–54. In a divorce proceeding, a wife had alleged that her husband had, among other misdeeds, attempted to defraud her out of her share of community property by fraudulently recharacterizing certain items of community property as his separate property. *Id*. at 548. The property dispute was eventually resolved in an agreed final divorce decree that awarded the husband all interests that either spouse had in the alleged community property that had been at issue. *Id.* Several years later, the ex-wife sued her ex-husband's father and several attorneys alleging that the defendants had fraudulently mischaracterized community assets as the husband's community property in inducing her to enter into the agreed divorce decree. *Id*. at 549. Although the parties were different, and the alleged mechanisms and means of committing the fraud were not precisely the same in the two cases, we held that the ex-wife's new claims were based on alleged fraud that was intrinsic to the prior divorce action. *Id*. at 552–53. We observed that Henderson had known of, complained about, and placed in issue her allegations regarding the fraudulent recharacterization of her community property interests in the divorce action, and, at that time, she was aware of a potential claim that the alleged fraud was the product of a conspiracy of actors in addition to her ex-husband, including his attorneys. *Id*. at 552–53. Consequently, the prior judgment in the divorce action barred Henderson's claims based on the same facts, including the claims she could have brought against her ex-husband's attorneys in the prior action. *Id*. at 553–54.

Cocke attempts to distinguish *Henderson* by characterizing "the fundamental question" there as whether or not the "concealment of the specific property at issue had been raised in the earlier litigation." She insists that the allegedly concealed property that is the subject of her RICO claims was not raised or litigated in either the Divorce Case or the Vantex Case because it

10

had not been categorized as part of the marital estate, and that she did not discover until later that the ownership of the property had been disguised. As an initial observation, the records from the Divorce Case and the Vantex Case belie Cocke's assertions that her RICO claims relate to property that was not specifically addressed in those prior proceedings—as our summary of the prior proceedings illustrates, many of the business entities that are the alleged mechanisms of RICO violations were also the subject of various allegations of fraud and concealment that Cocke asserted in the earlier cases. But more significantly, as *Henderson* recognizes, what matters is that Cocke previously placed in issue—repeatedly—her allegations that Simon and others were conspiring to defraud her of her interests in community property, and any subsequent alleged discovery of "new information" that might support the same claim does not distinguish the relitigated claim as one based on extrinsic fraud. *Id.* at 552 ("Any attempt to relitigate the claims in a new lawsuit, even if based on new information, constitutes a collateral attack on the prior judgment."). In fact, Cocke's central focus in the prior proceedings was the extent of her community interest and, relatedly, especially in the Divorce Case, allegations that Simon and others had conspired to deprive her of her proper share of the community estate. These claims were adjudicated in the Divorce Case, concluded by a decree that long ago became final for appellate purposes, and Cocke is not permitted to attack it collaterally now. *Id.* at 553–54.[9]

We conclude the appellees were entitled to judgment as a matter of law on the ground that Cocke's RICO claims were an impermissible collateral attack on the final judgments in either

---

[9] Similarly, Cocke questions whether the appellees who were not parties to the prior judgments possess "standing" to complain of an improper collateral attack. Cocke again misunderstands *Henderson* and the principles it applies. *See Henderson v. Chambers*, 208 S.W.3d 546, 553 (Tex. App.—Austin 2006, no pet.).

or both the Vantex Case and the Divorce Case. Because this ground alone suffices to support the judgment as to all appellees, we need not address Cocke's contentions regarding the res judicata ground. *See* Tex. R. App. P. 47.1; *Knott*, 128 S.W.3d at 217.

**Sanctions**

Appellees moved for, and the district court awarded, sanctions on the grounds that Cocke and her attorney filed a groundless pleading in bad faith or for the purpose of harassment in violation of Rule of Civil Procedure 13 and a frivolous pleading in violation of Civil Practice and Remedies Code chapter 10. *See* Tex. R. Civ. P. 13; Tex. Civ. Prac. & Rem. Code § 10.001. We review a trial court's award or denial of sanctions on appeal for an abuse of discretion. *Low v. Henry*, 221 S.W.3d 609, 614 (Tex. 2007). In matters committed to a district court's discretion, the test is whether the ruling was unreasonable or arbitrary or whether the court acted without reference to any guiding rules or principles. *Id.* To determine if the sanctions were appropriate or just, the appellate court must ensure there is a direct nexus between the improper conduct and the sanction imposed. *Id.* Generally, courts presume that the pleadings and other papers are filed in good faith. *Id.* The party seeking sanctions bears the burden of overcoming the presumption of good faith. *Id.*

In her first issue, Cocke argues that the district court lacked jurisdiction to hear or rule on the appellees' sanctions motion because, she insists, its plenary power had expired by that time. A trial court's plenary power generally expires thirty days after entry of a final judgment. Tex. R. Civ. P. 329b(a). However, upon the timely filing of a proper postjudgment motion, a trial court's plenary power extends to seventy-five days after entry of a final judgment. *See id.* R. 329b(c). The district court signed its order granting summary judgment—a final judgment—on July 11, 2012, and

12

the appellees filed their sanctions motion the following day. The Texas Supreme Court has held that a "timely filed postjudgment motion to incorporate sanctions into a new final judgment qualifies" as a motion to modify under Rule 329b(g), which extends the trial court's plenary power. *See Lane Bank Equip. Co. v. Smith S. Equip., Inc.*, 10 S.W.3d 308, 314 (Tex. 2000). Cocke complains that the appellees' sanctions motion did not explicitly request that the sanctions be incorporated into the final judgment, or otherwise refer to the final judgment. But this was plainly the legal effect and gravamen of appellees' motion, whether or not appellees said so, and we reject Cocke's attempt to elevate form over substance. *See Surgitek, Bristol–Myers Corp. v. Abel*, 997 S.W.2d 598, 601 (Tex. 1999) (courts look to substance of pleading rather than its caption or form to determine its nature). And because appellees' sanctions motion was a motion to modify the judgment, it extended the district court's plenary power until September 24, 2012—the date of the court's order. We overrule Cocke's first issue.

In her second issue, Cocke argues the district court abused its discretion in denying a request for continuance she had asserted and relegating her to proceeding without counsel. When reviewing a trial court's order denying a motion for continuance, we consider whether the trial court committed a clear abuse of discretion. *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 161 (Tex. 2004). A motion for continuance shall not be granted except for "sufficient cause supported by affidavit, or by consent of the parties, or by operation of law." Tex. R. Civ. P. 251. Generally, when a movant fails to comply with these requirements, we presume the trial court did not abuse its discretion in denying the motion. *Wilborn v. GE Marquette Med. Sys., Inc.*, 163 S.W.3d 264, 267 (Tex. App.—El Paso 2005, pet. denied) (citing *Villegas v. Carter*, 711 S.W.2d 624, 626 (Tex. 1986)). When the ground for continuance is the withdrawal of counsel, the movant must show

13

that the failure to be represented at trial was not due to her own fault or negligence. *See McAleer v. McAleer*, 394 S.W.3d 613, 617 (Tex. App.—Houston 2012, no pet.) (citing *Villegas*, 711 S.W.2d at 626); *see also* Tex. R. Civ. P. 253 ("[A]bsence of counsel will not be good cause for a continuance . . . except it be allowed in the discretion of the court, upon cause shown or upon matters within the knowledge or information of the judge to be stated on the record.").

Cocke filed a motion for continuance approximately two weeks before the sanctions hearing. The motion did not comply with Tex. R. Civ. P. 251. Further, Cocke indicates in her brief that she attempted to have her motion heard prior to the sanctions hearing, but was refused. It appears from the record of the sanctions hearing that Cocke did not rely on her written motion, but instead orally moved for continuance. Because Cocke failed to comply with the requirements of rule 251, we presume that the district court did not abuse its discretion in denying her motion. *See* Tex. R. Civ. P. 251; *Wilborn*, 163 S.W.3d at 267.

At the sanctions hearing, Cocke represented to the district court that she had approximately three weeks between her prior counsel's withdrawal and the sanctions hearing to obtain new counsel. She further asserted that she had interviewed four different attorneys, but they did not feel "comfortable with the time frame to be able to come in here and represent [her] properly." She did not indicate that she was in current discussions with any other attorneys, but agreed that she had hopes of hiring another attorney and the resources to do so. Appellees' counsel countered that the sanctions hearing had already been reset once, that because of the conflicting schedules of the various attorneys involved, they had only been able to agree on the present date, and that the court's plenary power was set to expire in several days. Given the lack of specificity with which Cocke explained the delay in obtaining new counsel, the district court could have

14

reasonably concluded that she did not carry her burden of showing that the delay was not caused by her own fault or negligence. *See Ayati–Ghaffari v. H–Ebrahimi*, 109 S.W.3d 915, 916–17 (Tex. App.—Dallas 2003, no pet.). Considering the circumstances of this case and taking into account the abuse-of-discretion standard under which we must review the court's determination, we conclude that the district court did not abuse its discretion in denying Cocke's motion for continuance. *Id*. We overrule her second issue.

In her third and fourth issues, Cocke argues that the district court abused its discretion in awarding sanctions because the court's order failed to describe the sanctionable conduct with the requisite particularity and there was legally insufficient evidence to support the court's findings. *See* Tex. R. Civ. P. 13 ("No sanctions under this rule may be imposed except for good cause, the particulars of which must be stated in the sanction order."); Tex. Civ. Prac. & Rem. Code § 10.005 ("A court shall describe in an order imposing a sanction under this chapter the conduct the court has determined violated Section 10.001 and explain the basis for the sanction imposed."). We have reviewed the district court's order awarding sanctions and conclude that it sufficiently describes the conduct that the court determined sanctionable and that there is legally sufficient evidence supporting the award. *See Alpert v. Crain, Caton & James, P.C.*, 178 S.W.3d 398, 412 (Tex. App.—Houston 2005, pet. denied) (holding "trial court included particular findings in its award of sanctions that are supported by the record"). We overrule Cocke's third and fourth issues.

In her fifth issue, Cocke asserts that the district court abused its discretion by awarding excessive sanctions. The amount of sanctions is limited by the court's duty to exercise sound discretion. *Low*, 221 S.W.3d at 619. A sanction under rules 13 and 215.2 "must relate directly to the abuse found and 'be no more severe than necessary to satisfy its legitimate purpose.'"

15

*Id.* at 620 (citing Tex. R. Civ. P. 13, 215.2; *TransAmerican Natural Gas Corp. v. Powell*, 811 S.W.2d 913, 917 (Tex. 1991)). The only restriction on the amount of the penalty under chapter 10 is that the "sanction must be limited to what is sufficient to deter repetition of the conduct or comparable conduct by others similarly situated." Tex. Civ. Prac. & Rem. Code § 10.004(b); *Low*, 221 S.W.3d at 620. The Texas Supreme Court has noted that the determination of the amount of a penalty to be assessed under chapter 10 should "begin with an acknowledgment of the costs and fees incurred because of the sanctionable conduct." *Low*, 221 S.W.3d at 621. We have reviewed the record, including evidence presented at the sanctions hearing indicating that the appellees had incurred approximately $150,000 in attorney's fees in defending against Cocke's claims, not including estimated appellate fees of approximately $70,000. On this record and given the circumstances surrounding these proceedings, we cannot conclude that the district court abused its discretion. We overrule Cocke's fifth issue.

## CONCLUSION

We affirm the district court's judgment.

_____

Bob Pemberton, Justice

Before Chief Justice Jones, Justices Pemberton and Field

Affirmed

Filed: August 27, 2013